# Alabama Great Southern Railroad Co. v. Davis.

*Action for Damages for Personal Injury to Employe.*

1. *General averment of negligence.*—A complaint in an action for personal injuries received by an employe, while engaged in the discharge of his duties, averring that plaintiff's "injuries were caused by the negligence of an engineer of defendant, who then and there had charge or control of an engine of defendant," is not demurrable because it does not show how the injury occurred, nor in what the negligence consisted, nor what position plaintiff held as an employe, nor how the negligence of the engineer was connected with the injury, nor that plaintiff was in the place where the proper discharge of his duties required him to be.

[Alabama Great Southern Railroad Co. v. Davis.]

2. *General averment as to rate of speed.*—A count averring that plaintiff's injuries resulted from the negligence of the engineer "in running said steam engine at too high a rate of speed," is not demurrable because it does not show why or how the rate of speed was too high, nor what connection the running at too high rate of speed had with the injury complained of.

3. *Jumping from moving car; general averment of necessity for, to avoid injury.*—A count based upon the negligence of the engineer "in running said engine at too high rate of speed over a track that was out of repair, running the cars off the track, and compelling plaintiff to jump from the cars to the ground whilst they were in motion to avoid injury from their derailment," and showing that the injuries resulted from jumping from the car, is not demurrable in not showing that the cars were derailed, or about to be derailed, when plaintiff jumped, or fails to show any apparent necessity or good reason therefor when plaintiff jumped from the moving car.

4. *Defective track; general averment sufficient.*—A count under the Employer's Act, averring, "that said injuries resulted from some defect in the track used by defendant, which defect arose from or had not been discovered or remedied owing to the negligence of defendant, or that of some person in defendant's service and intrusted by it with the duty of seeing that the track was in proper condition," is not demurrable in not showing what the defect consisted of; nor the connection between the defect and the injuries complained of; nor that plaintiff did not know of the defect at the time of the accident.

5. *Contributory negligence; evidence admissible under general plea of.*—Where plaintiff joins issue on a general plea of contributory negligence—that the injuries complained of were the proximate result of plaintiff's contributory negligence—not specifying what negligence is relied on, the defendant may make any defense of contributory negligence the evidence may establish, and evidence of any negligence, legally contributory, is admissible under it.

6. *Assuming risk of known defects in track, etc.*—Where plaintiff, a brakeman on defendant's train, had knowledge of a defective track and switch for two years, and knowing that a train had been derailed only an hour or two before the accident from such defects, continued in the employment and to pass over the track and switch, he voluntarily took upon himself the hazard of the dangerous track and switch, whether he had given defendant notice of the defect or not, unless there was some intervening fact to justify him in continuing in the service.

7. *Section foreman; person intrusted with keeping track in repair.* It is common knowledge that a railroad section foreman is a

person who has charge and superintendence of the force of roadway laborers, and charged with the duty of keeping the track in proper condition, over that section of the road assigned to him; he is the person intrusted by the defendant with the duty of seeing that the track is in proper condition, notwithstanding he gets orders from a supervisor, whose duty it is to see that the track is so kept.

8. *Crew on train may rely on report of foreman that track is safe.* If the section foreman of defendant corporation, reported to plaintiff, a brakeman on a train of defendant, that a known defect in the track under his superintendence had just been repaired, so as to be safe, and there was nothing to cause plaintiff to disbelieve the statement, the plaintiff had the right, in good faith, to rely upon information so received and continue in the service, so far as danger from the defects to which the information related were concerned; and if, under such circumstances, he did rely upon it, and continue in the service when he would not otherwise have done so his continuance in the service was not an assumption of the risk of an accident in running over the track.

9. *Negligence of engineer in running too fast; notice of defective track.*—Where plaintiff counts on the negligence of the engineer in running the train too fast over a certain track, it is relevant to prove that shortly before the accident the con ductor in charge of the train told the engineer to run slow while switching backward on the track, as tending to show that the engineer had notice of the defective condition of such track.

10. *Abstract and misleading charge erroneous.*—It is error to give a charge at the instance of plaintiff which is abstract and misleading, in a way that the jury might be induced to allow an item of damages to which he is not entitled.

11. *Charge ignoring testimony; contributory negligence.*—Where the evidence without conflict shows that plaintiff was in his proper place on the train, and the jury could draw no other inference than that the best thing he could do for his safety was to jump from the train, a charge is not erroneous in ignoring the question of contributory negligence in his position on the train, or in jumping therefrom; but is erroneous, if it excuses plaintiff for continuing in a dangerous service because of information that the danger had been removed, and ignores the predicate that he believed and relied upon such information, and was induced by it to continue in the service.

12. *Actual damages; physical and mental pain.*—In an action for personal injuries to plaintiff, an employe, a charge that physical and mental pain, when proved, are actual damages, and may be looked to by the jury in estimating damages if from the whole evidence they find that plaintiff should have a verdict, is correct.

Vol. 119.

13. *Medical bill, must be proven.*—When the evidence does not show the expense of plaintiff for medical services, it is error to refuse a charge instructing the jury that plaintiff cannot recover therefor.

14. *Averment that person guilty of negligence is unknown, must be proven.*—An averment in a count for personal injuries to an employe, that the name of the person guilty of the alleged negligence was unknown to plaintiff, is a substantial averment, and there can be no recovery under the count making it, if the proof shows it was not true.

APPEAL from Gadsden City Court.

Tried before Hon. JOHN H. DISQUE.

On December 5, 1893, the appellee, J. M. Davis, brought the present suit against the Alabama Great Southern Railroad Company. The complaint contains nine counts, the substance of which are as follows: 1. "The plaintiff claims of the defendant, which is a corporation under the laws of Alabama, the sum of ten thousand dollars as damages, for that whereas the defendant was engaged in the business of operating a railroad in Etowah County, Alabama; that the plaintiff was at the time of the injuries complained of an employe of defendant (engaged in the discharge of his duties as such employe) and that whilst plaintiff was in the employ of defendant, on the 18th day of September, 1893, in Etowah County, Alabama, plaintiff had his ankle broken, and suffered great mental and bodily pain, and lost his time and incurred large doctor's bills and nurse hire, and was disfigured and disabled for life from earning a living, and permanently injured; and plaintiff avers that his injuries were caused by the negligence of an engineer of defendant who then and there had charge or control of an engine of defendant—hence this suit." 2. "Plaintiff claims of defendant ten thousand dollars as damages, for that whereas defendant was, at the time of the injuries complained of, a railway corporation, and was using and operating a steam engine in the State of Alabama, and plaintiff was then and there an employe of defendant (engaged in the discharge of his duties as such employe) and whilst plaintiff was thus in the employ of defendant, on, to-wit, the 18th day of September, 1893, he had his ankle broken and was otherwise wounded and injured, and suffered great mental and bodily pain therefrom, and lost his time,

and incurred large medical bills and nurse hire, and was disfigured and disabled for life from earning a living, and was permanently injured, and plaintiff avers that his injuries resulted from the negligence of an engineer of defendant in running said steam engine at too high a rate of speed, and said engineer then and there had the charge or control of said engine of defendant—hence this suit." The allegations of negligence contained in the other counts of the complaint are as follows: (each count of the complaint being numbered by its corresponding number). 3. "And plaintiff avers that his injuries resulted from the negligence of an engineer of defendant in running said steam engine and cars at too high a rate of speed over rails which were old, worn, and unsound and unsafe, and said engineer then and there had control of said engine of defendant—hence this suit." 4. "And plaintiff avers that said injuries resulted from the negligence of defendant's engineer in charge of said engine, in running said engine at too high rate of speed over a track that was out of repair, running the cars off the track and compelling plaintiff to jump from the cars to the ground whilst they were in motion to avoid injury from their derailment—hence this suit." 5. "And plaintiff avers that said injuries resulted from some defect in the track used by defendant, which defect arose from or had not been discovered or remedied owing to the negligence of defendant, or that of some person in defendant's service and intrusted by it with the duty of seeing that said track was in proper condition, the name of said person being unknown to plaintiff." 6. "And plaintiff avers said injuries were caused by a defect in the track then and there used by defendant, in that the rails of the track were old and mashed and worn, and said defect arose from and had not been remedied owing to defendant's negligence, or the negligence of some person in defendant's service, and entrusted by defendant with the duty of seeing that said track was in proper condition, the name of said person being unknown to plaintiff." 7. "And plaintiff avers said injuries resulted from the negligence of defendant in using a track which was then and there out of repair and unsafe for use, whereby, plaintiff, who was a brakeman on defendant's train, was forced to jump from the train to avoid injury from the

derailment of the cars by reason of defective track, as aforesaid, and said defect arose from or had not been remedied or discovered owing to defendant's negligence, or of some person in its service, entrusted by it with the duty of seeing that the ways, works, machinery or plant were in proper condition." 8. "And plaintiff avers said injuries were caused by the negligence of defendant in its failure to put and keep and maintain in repair the track then and there in use by it, whereby plaintiff became and was disfigured and disabled for life from earning a living and permanently injured; and plaintiff avers said injuries were caused by the negligence of defendant in its failure to put and keep and maintain in repair the track then and there in use by it, whereby plaintiff became and was damaged in the sum of ten thousand dollars as aforesaid; and plaintiff avers that said failure to put, keep and maintain the track in repair, arose from, or had not been remedied or discovered, owing to defendant's negligence, or of some person in defendant's service, entrusted by it with the duty of seeing that the ways, works, machinery or plant were in proper condition." 9. "Said injuries were caused by a defect in the track used by defendant, to-wit: Its wrong construction and defect arose from defendant's negligence, or had not been remedied or discovered, owing to its negligence, or that of some person in its service, entrusted by it with the duty of seeing that said track was in proper condition." 4, 5, 6 and 7 counts aver that plaintiff was a brakeman. The defendant demurred to the complaint as follows: 1. "Said first count does not show how the injury occurred. 2. Said first count does not sufficiently disclose the facts attending the injury complained of. 3. Said first count does not show the alleged negligence of the engineer was connected with the injury complained of." To the 2, 3 and 4 counts he demurred upon the following grounds: "Said count fails to show what connection the running of said engine at too high a rate of speed had with the injury complained of." To the 5, 6, 7, 8 and 9 counts, he demurred upon the following grounds substantially: 1. "Said count fails to show how the injuries complained of resulted from the defect in the track complained of. 2. Said count fails to show any connection between the alleged defect in the track and the injuries complained of. 3.

Said count fails to show what the alleged defect in the track consisted of. 4. Said count fails to show that plaintiff did not know of the condition of the track. 5. Said fifth count fails to show that defendant knew or ought to have known of the condition of the track. 6. Said count shows that plaintiff was an employe and assumed the risk of all damages arising from obvious defects in the condition of the track. These demurrers were overruled. Whereupon, the defendant demurred to the complaint as follows substantially: To each count of the complaint he demurred upon the following grounds: 1. Said count fails to set out any of the facts of the alleged negligence. 3. Said count fails to show what position plaintiff held as an employe. 4. Said count fails to show that at the time of the happening of the alleged injury plaintiff was in the discharge of his duties as an employe. 5. Said count fails to show that the engineer had charge of an engine upon the railway of defendant. 6. Said count fails to aver that plaintiff, at the time of the happening of the injury, was in the place where the proper discharge of his duties required him to be. To each count, except the first, upon the further grounds: 7. Said count fails to show that the engine was being run on the railway of defendant. 8. Said count fails to show why or how the rate of speed was too high. To fourth count, upon the further grounds: 9. Said fourth count fails to show that the cars were derailed, or were about to be derailed when plaintiff jumped. 10. Said fourth count shows on its face that plaintiff's injuries resulted from his jumping from the cars in motion, and fails to show any reason why plaintiff jumped. To the 5, 6, 7, 8 and 9 counts upon the further grounds: 9. Said seventh and eighth counts fail to aver that the defects therein arose from or had not been discovered or remedied owing to the negligence of the defendant, or of some person in the service of defendant and entrusted by it with the duty of seeing that the ways, works, machinery or plant were in proper condition. 10. Said fifth, sixth, seventh, eighth and ninth counts each fail to show that the injury was caused by any defect in the condition of ways, works, machinery or plant connected with or used in the business of the master of employe. 11. Said seventh count shows on its face that the injuries resulted from

plaintiff's jumping from the car while in motion, and fails to show any good reason why plaintiff jumped. 12. Said seventh count fails to show that an apparent necessity arising from the negligence of defendant existed when plaintiff jumped from the moving car. These demurrers were overruled. Thereupon, the defendant filed the following pleas, upon which issue was joined: "1. Comes the defendant, and for answer to the plaintiff's complaint denies each and every allegation contained in plaintiff's complaint. 2. And for further plea on their behalf defendant says that the injuries complained of are the proximate result of plaintiff's contributory negligence." The facts of the case are sufficiently stated in the opinion. Upon the introduction of all the evidence the court at the request of the plaintiff gave to the jury the following written charges: (1.) "The court charges the jury, if you find for the plaintiff in this case, in estimating the damages the jury may consider the disabling effects of the injury, if such has been proved, and also all necessary expenses suffered by him in and about his case and also his mental and physical pain proximately resulting from the injury, if such have been proved." (2.) "The court charges the jury that if they find from the evidence that Stewart was the yard master and the conductor, and was the superior of Davis in the service and Davis was under his control and subject to his orders, and if they further find from the evidence that Stewart, while so in charge as conductor and yard master, sent Davis to notify the section foreman to come and repair the switch, then the law did not require Davis to give any further or other notice to any one." (3.) "The court charges the jury that if they believe that the railroad company was informed of the defect in the track, and agreed to remedy it, Davis would not be guilty of contributory negligence if he remained in the railroad employment for a reasonable time afterwards, so as to give it the opportunity to remedy the defect in the track, if any existed." (4.) "The court charges the jury that if they find from the evidence that Stewart was the yard master and the conductor, was the superior of Davis in the service, and Davis was under his control and subject to his orders, and Stewart knew of the condition of the switch, and Davis was aware that Stewart knew it, and Davis notified the sec-

[Alabama Great Southern Railroad Co. v. Davis.]

tion foreman to come and repair the switch, and afterwards the section foreman reported that the switch was all right, and thereupon, Stewart, with knowledge of all the above facts, ran his train out and over the switch, the law does not require that plaintiff should show, before he can recover in this action, that he gave any further or other notice of the condition of the switch before the accident." (5.) "The court charges the jury that if they believe from the evidence Woodliff was the section foreman of the railroad company at the time Davis was injured, and that he told Davis just before the latter's injury, that the switch had been fixed so as to make it safe for use, the jury are authorized to find from this evidence, in connection with all the other evidence, that Davis was not guilty of contributory negligence, and if they so find, their verdict must be for the plaintiff, if they believe the railroad company was guilty of negligence in this case." (6.) "The court charges the jury that physical and mental pain, when proved, are actual damages, and may be looked to by the jury in the estimation of such damages, if from the whole evidence they find that plaintiff should have a verdict." The defendant separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give each of the following charges requested by it: (1.) "The court charges the jury that if they believe all the evidence they cannot allow the plaintiff anything for doctor's bill." (2.) "The court charges the jury that if they believe that the injury occurred by reason of the mismatched stub switch, then the jury should find a verdict for the defendant." (3.) "The court charges the jury that if they believe from the evidence that the concurring causes which produced the injury were the mismatched stub switch and the running at too high rate of speed, then the jury should find a verdict for the defendant." (4.) "The court charges the jury that if plaintiff knew that there was a mismatched stub switch, and that such stub switch constituted a defect in the ways, works or machinery, then the duty rested on plaintiff to give information thereof to defendant or to some person superior to himself, engaged in the service or employment of the master or employer, and information of such defect given to Woodliff, section foreman, (if such information was given) was not a compliance with

this duty." The defendant further requested in writing the general affirmative charge on the whole case, and on each count separately. These charges the court refused. From a judgment for plaintiff, defendant appeals, and assigns as error the several rulings above set out.

A. F. GOODHUE, for appellant, cited, in support of the assignment of error as to the sufficiency of the complaint.—*L. & N. R. R. Co. v. Bouldin*, 20 So. 329; as to plaintiff's assuming the risk and rendering himself guilty of contributory negligence by continuing in employment.—*Birmingham Ry. Co. v. Allen*, 99 Ala. 359; *Eureka Co. v. Bass*, 81 Ala. 201. Charge 5 given for plaintiff was erroneous, in failing to hypothesize that the negligence of defendant was the proximate cause of the injury, and other reasons.—*Williams v. Woostock Iron Co.*, 106 Ala. 254; *M. & M. R. R. Co. v. Ashcraft*, 48 Ala. 15. The charge that plaintiff could not recover because the rails were old and worn and mashed should have been given because it was shown this defect was not the cause of the injuries, and plaintiff knew it had not been remedied when he continued in the employment. The court erred in refusing to instruct the jury that plaintiff, under the evidence, could not recover for his doctor's bill.

DORTCH & MARTIN, *contra*.—The several counts of the complaint were sufficient; it is not necessary to state the facts which constitute and go to prove negligence. The demurrers were properly overruled.—*Oxford Lake Line v. Stedham*, 101 Ala. 378; *Tuck v. L. & N. R. R. Co.*, 98 Ala. 150; *Mary Lee Coal & R'y v. Chambliss*, 97 Ala. 171; *M. & O. R. R. Co. v. George*, 94 Ala. 215; *L. & N. R. R. Co. v. Hawkins*, 92 Ala. 244; *Ga. Pac. Ry. Co. v. Davis*, 92 Ala. 307; *Chewning v. Ensley, R. W.*, 93 Ala. 24; *C. & W. R. R. v. Bradford*, 86 Ala. 574; *M. & M. R. R. v. Crenshaw*, 65 Ala. 566; *Gov. St. R. W. v. Hanlon*, 53 Ala. 70. Plaintiff had a right to rely on statement of the section foreman.—*Baylor v. B. R. W. & E. Co.* 101 Ala. 488. The general charge requested by defendant as to doctor's bill was properly refused.—66 Ala. 593; 27 Ala. 592; 15 Ala. 457; 68 Ala. 412. The general affirmative charge also.—94 Ala. 199.

HEAD, J.—Action for damages against the railroad company for personal injuries.

We hold, upon due consideration, that none of the counts of the complaint are subject to the demurrers assigned to them, though some of us were inclined to think too much indefiniteness and uncertainty, in stating the relation which the plaintiff bore to the defendant's service at the time he was injured, and how the injury was inflicted, characterized some of the counts. Pleadings ought to be clear and explicit in their averments. We, however, qualify the above statement so far as it applies to one objection raised to the second count. The point of this objection is that the count does not show that the engine was "upon a railway or of some part of the track of a railway" within the terms of subdivision five of the Employers' Liability Act. As the judgment must be reversed for other causes, and as, in point of undisputed fact, in the cause, the engine in question was upon the railway of the defendant, we will not pass now upon the practically abstract question, suggesting merely that it would be well for the plaintiff to relieve the case of it by making the allegation insisted upon as necessary.

There was no plea of contributory negligence specifying what particular negligence of the plaintiff was relied upon, but there was a general plea that the injuries complained of were the proximate result of plaintiff's contributory negligence, on which issue was joined. This authorized the defendant to make any defense of contributory negligence which its evidence might establish, and evidence of any negligence, legally contributory, was admissible under it.

Taking the plaintiff's undisputed testimony as evidence of the facts, at the time of his injury he was engaged, under employment of the defendant, as a car-coupler and brakeman on a train in defendant's service. When injured, the train was being run on a sidetrack which belonged to a furnace company, but which was used by the defendant, for switching cars for the furnace company. The track was in bad condition; the rails being old and worn and the stub switch mismatched. On the day of the injury, plaintiff's train went in on this sidetrack and was thrown from the track by said mismatched stub switch. Within an hour or

hour and a half, the train went back, and was again
thrown from the track by said switch, and plaintiff was
thereby injured. In a matched stub switch, the insides
of the rails are straight and even with each other; in a
mismatched stub switch they are not even, and while
running on a rail, instead of the flange taking the inside
of the other rail, it will strike the end of the rail and
mount it. That was what caused the wreck in the pres-
ent case. The plaintiff testified that he had seen the
mismatched switch there before; and it had been there
ever since he had been working for the company, which
had been two years before the injury occurred; that the
defendant kept this sidetrack in repair; that defendant
did all its switching there for the furnace company; that
he had been at work there, off and on, for two years, and
defendant had been doing the switching there during
that time. Plaintiff had told defendant's section fore-
man, before the injury, that the switch was out of re-
pair. A witness for plaintiff testified that the cars had
been frequently off the track there; that they were pretty
nearly all the time getting off the track up there; that
the track was in a bad fix.

Under this evidence, about which there is no dispute,
it is manifest that the case comes within the principle
declared in *Birmingham Ry. Co. v. Allen*, 99 Ala. 359,
(reaffirming *Eureka Co. v. Bass*, 81 Ala. 201); *L. & N.
R. R. Co. v. Stutts*, 105 Ala. 368; *L. & N. R. R. Co. v.
Banks*, 104 Ala. 508, to the effect that plaintiff volun-
tarily took upon himself the hazard of the dangerous
track and switch, by so long continuing, knowingly, to
expose himself to the danger, unless there is something
else in the case which takes it without the principle;
and for this purpose, the plaintiff relies upon the follow-
ing facts: One Woodliff was section foreman, and with
his force, did the track repair work on a part of defend-
ant's road, including the track where the injury oc-
curred. Plaintiff testified that when they went in at the
switch that day, (which, we have seen, was an hour or
an hour and a half before they came out and the injury
occurred), they saw Woodliff at work close to the point,
doing some job, 300 or 400 yards from the point where
they got the car off. Woodliff came up there while they
had the car off, and plaintiff told him that the switch
was out of order, was not matched and that they had

gotten a car off there, and asked him to come and repair the switch. Woodliff brought his men there to work, and afterwards, and before the train came out and the wreck happened, in which plaintiff was injured, went to the train crew, including plaintiff, and told them that the track was fixed, was all right and safe and that they could go on. The conductor of the train testified that they had a car off at the switch, and he sent Davis to tell Woodliff to repair the switch; and afterwards, and before the wreck and injury occurred, Woodliff came to where they were and told them it was fixed. Plaintiff insists he relied, and had a right to rely, upon this statement of Woodliff, and continue, thereafter, in the service as he did without the imputation of negligence on his part. The defendant insists that Woodliff did not occupy such a relation to it, as that it could be legally affected by his declarations, of the character relied upon. Its counsel insists that it was merely his, Woodliff's, duty to *do the work* of repairing the track; that he was not "in the service of the master or employer, and intrusted by him with the duty of seeing, that the ways, works, machinery or plant were in proper condition," within the meaning of that provision of the employers' liability act, and was not a "person in the charge or control of any part of the track of a railway" within the meaning of subdivision five of that act; hence, that Woodliff was only a fellow-servant—a co-laborer with plaintiff, not charged with the supervisory duty of seeing that the track was in proper condition, but only with the duty of *doing the work* of repairs, in pursuance of the judgment and discretion of a supervisor. The evidence as to what Woodliff reported to the crew was objected to, and exceptions reserved to its admission.

The evidence of the duties of Woodliff was as follows: B. L. Stewart, yard master of defendant and conductor of said train, testified that the section foreman got his orders from the supervisor; that section foremen's general duty is to keep the track in repair; the supervisor merely sees that it is so kept. The plaintiff testified "that defendant had Woodliff seeing after the branch from Gadsden to Attalla and keeping the track in proper repair, and he did the work on this track, where I was hurt." Further on he said: "It is the duty of the section foreman to keep the track in proper repair." It is com-

mon knowledge that a railroad section foreman is a per-
son who has charge and superintendence of the force of
roadway laborers, and charged with the duty of keeping
the track in proper condition, over that section of the
road assigned to him. If he should learn of a defect in
any part of the track, on his section, we suppose it
would not be disputed that it would be his duty to have
it repaired and see that it was properly done, without
any order from any one. It would be a very narrow con-
struction of the statute to hold that he was not a person
intrusted by the defendant with the duty of seeing that
the track was in proper condition.—*Birmingham Ry. &
E. Co. v. Baylor,* 101 Ala. 488.

We hold, therefore, that it was competent for the
plaintiff to make the proof in reference to repair of the
track by Woodliff, and his, Woodliff's report to the crew
that the track had been fixed and was safe for the train
to go out on. It was admissible to be considered by the
jury in determining whether the plaintiff voluntarily
accepted the danger, which would, as we have said, have
been the case without some intervening fact which jus-
tified him in continuing in the service. If the section
foreman reported to plaintiff that the track had been
fixed so as to be safe, and there was nothing to cause the
plaintiff to disbelieve the statement, the plaintiff had
the right, in good faith, to rely upon the information so
received and continue in the service, so far as danger
from the defects to which the information related were
concerned; and if, under such circumstances, he did rely
upon it, and continue in the service when he would not
otherwise have done so, his continuance in the service
was not an assumption of the risk.

The statement of the witness, Stewart, that on two or
three different occasions not long before the accident,
perhaps a day or two before, he told the engineer, Jack-
son, to run slow while switching backward and forward
on the furnace track, was objected to by the defendant
on the grounds that the same was irrelevant and imma-
terial. Some of the counts of the complaint charged
that the injury resulted from the negligence of the en-
gineer in running the train too fast. In view of this is-
sue it was competent for the plaintiff to show that the
engineer had received notice, shortly before the injury,
of the bad condition of the track, and that the evidence

objected to had a tendency to show such notice. The evidence, therefore, was neither immaterial nor irrelevant.

The first charge requested by the plaintiff was abstract in so far as it allowed recovery for expenses suffered by plaintiff in and about his cure. There was no proof at all of the expense he suffered; the jury had no data to be governed by, and the charge submitted to them a matter they could not determine. The charge was misleading, in a way that might have induced the jury to the prejudice of the defendant to allow the plaintiff for the medical services rendered by Dr. Stewart, under the employment of the defendant, and for which it had paid· The court erred in giving the charge.

Under the facts of this case it was immaterial whether plaintiff had given the defendant notice of the condition of the track or not. If, as we have said, he was not justified in continuing or did not continue in the service, by reason of what occurred with Woodliff, in reference to the repair of the track, on the day of the injury, the undisputed facts of the case are such, that he was not entitled to recover on account of the condition of the track, whether he had given defendant notice of the condition or not. So that, charges 2 and 4 given for plaintiff were upon immaterial questions, and might have been refused.

Charge number 3 was abstract and erroneous and ought to have been refused. There was no evidence that the defendant, through Woodliff or any one else, agreed to remedy the defect in the track, and if there had been, the charge ignores the inquiry as to whether the plaintiff knew that the agreement had not been carried out. We have already stated what occurred between Woodliff and the crew.

It was insisted by the defendant that the plaintiff was guilty of contributory negligence in taking the position he did on the train, on the occasion of the injury. The evidence on that subject was as follows: The plaintiff testified, that at the time of the injury he was standing on the end sill between two cars, the first and second cars from the front; that one had to stand on the end sill to set the brakes up, and that he set the brakes up as soon as he turned over the hill, in about 200 or 300 yards of the place of the injury; that his place that day

was following the engine, but, that morning, he was not feeling well, and he asked Stewart, the yard-master, to let him change with Boggus, and let Boggus follow the engine that day; that at the time of the injury, he was standing with one hand on the brake and the other on top of the car; the train had seven cars of slag, loaded in dumps; the engine was backing up; the car in front of him got off the track and was turned over, he jumped from the end of the sill and broke his ankle; could not get into the car; it was loaded with slag and he would have had to climb upon slag; the slag from the car in front of him scattered everywhere; the car he was standing on was torn in two, in the middle, and the brake rod and brake wheel where he was standing were broken into pieces; he set up two brakes and did all he could to stop the speed of the train; the train was running pretty fast and was pretty rocky; four cars left the track; it was a heavy down-grade; train running about fifteen miles per hour; he was six cars from the engine; he had permission to make the change with Boggus, from Stewart to whose orders he was subject; right in between the cars was his place to stand, so that he could let off brakes when they got the speed slackened; did not get speed slackened because engineer was working steam. He was a railroad man of twenty years' experience. He stated that he would have been killed if he had not jumped.

Boggus' testimony, so far as it touched on these points, was about the same, and there was no evidence in conflict with the plaintiff's, except as to the speed of the train—the defendant's evidence being that the train was running about eight miles per hour. If this testimony was true, we do not see how contributory negligence, in the respect now under consideration, can be imputed to the plaintiff. It shows that he was at his proper place, and, we think, the jury could have drawn no other inference from it, but that the best thing he could have done for his own safety was to jump, as he did. We think, therefore, that charge numbered five given for the plaintiff, was not objectionable on the ground that it ignored this character of contributory negligence, and confined the question of contributory negligence to the plaintiff's remaining in the service, with knowledge of the condition of the track. But the

charge is objectionable for another reason. The plaintiff was not excusable on account of what Woodliff reported, in reference to the track, unless he believed and relied upon it, and was induced by it to continue in the service, when, on account of the condition of the track, he would not otherwise have done so. The charge ignores this predicate, and ought to have been refused. The giving of it was error.

The sixth charge requested by the plaintiff was properly given.

Charge one requested by the defendant ought to have been given.

Count seven of the complaint covered the case of a mismatched switch. Wherefore charge two requested by the defendant was properly refused.

Defendant's charges 3, 4 and 5 were properly refused.

The general charges on the whole case, and the several counts were properly refused, except as to the sixth count for the reason that the allegation of that count that the name of the person guilty of the alleged negligence was unknown to the plaintiff, was disproved by the undisputed evidence, and the general charge, on that count ought to have been given.—*L. & N. R. Co. v. Bouldin*, 110 Ala. 185. The allegation is not authorized to be made as a mere form, to be lost sight of in the proof. It is substantial, and when made there can be no recovery under the count making it, if the proof shows it was not true, as in this case.

For the errors mentioned, the judgment is reversed and the cause remanded.

Reversed and remanded.