# Baldwin *v.* Walker.

*Action on Attachment Bond, for Damages.*

1. *Answer to cross-interrogatory; objection by party asking it.*—A party can not complain of statements of facts by a witness which are called out by his own questions, and which are fairly responsive; especially when his interrogatory is very general in its terms, as by asking the witness to "tell all about it."

2. *Declarations of intention as evidence.*—In an action on an attachment bond, the attachment having been sued out on the ground that the defendant was about to remove from the State, she can not prove her declarations to third persons, prior to the issue of the writ, to the effect that she was going off on a summer visit to relations, but intended to return, and expected to end her days here.

3. *To what witness may testify.*—A witness who was boarding with the defendant at the time the attachment was sued out against her, can not be allowed to testify that he *knew* she was not about to remove from the State at that time, this being a matter of mere inference or opinion.

4. *Relevancy of habit to make summer visits, as affecting question of removal.*—The attachment having been sued out on the ground that plaintiff was about to remove from the State, and the uncontradicted evidence showing that she did go to Philadelphia a few months afterwards, it is permissible for her to prove that she was in the habit of going to that city on a visit every summer.

5. *Defendant's declarations subsequent to suing out attachment.*—The declarations of the defendant in attachment, tending to show preparations for removal from the State, if made after the suing out of the writ, are not admissible as evidence against her; but, if the evidence leaves it doubtful whether such declarations were made before or after that time, the jury should be left to decide that question, and the declarations should be allowed to go to them under proper instructions on that point.

6. *Counsel fees as damages.*—In an action on an attachment bond, attorney's fees for defending the attachment suit can not be recovered as damages, when it appears that no defense was made, although services were rendered by the attorney in filing cross-interrogatories to plaintiff's witnesses, requiring proof of the debt, &c. (WALKER, J., *dissenting* )

7. *Advice of counsel as defense for suing out attachment.*—To make the advice of counsel a defense to an action on an attachment bond, it must not only appear that the person who sued out the writ "informed him of all the facts in his possession," but also that he used due diligence to ascertain the facts.

8. *Defect in defendant's title to property levied on.*—The attachment having been levied on a house and lot which the defendant held under the will of her deceased husband, the fact that the property was subject to his debts does not, as matter of law, show that she was not injured by the levy.

9. *Damages against principal, for attachment sued out by agent.* When an attachment is sued out by an agent, wrongfully and without probable cause, and the act is ratified by the principal with full knowledge, the recovery in an action on the bond is not limited to actual damages.

[Baldwin v. Walker.]

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by Mrs. Ida S. C. Walker, against A. M. Baldwin, surety on an attachment bond; and was commenced on the 30th March, 1888. The attachment against Mrs. Walker was sued out on the 29th March, 1888, by the Empire Paper Bag Company, a partnership doing business in New York; and the defendant in this case was indemnified by them to sign the attachment bond. The affidavit for the attachment was made by one W. E. Crane, an agent of the plaintiff company, who had been sent out from New York with instructions to collect the debt. The attachment was sued out on the ground that Mrs. Walker was about to remove from the State, and said Crane testified on the trial to the information which he had received, in answer to inquiries, as to her embarrassed condition, her offer to sell her house and lot, and her intention to move to Philadelphia; and further, that he stated these facts to an attorney, who advised him that they constituted good ground for an attachment. The attachment was levied on a house and lot in the city of Montgomery, in which Mrs. Walker then resided, and which she claimed under the will of her deceased husband, who died in September, 1887, and whose estate, the evidence showed, was indebted on said 29th March, 1888. "There was no evidence," the bill of exceptions states, "that Mrs. Walker was ever dispossessed of said house and lot by said writ of attachment, nor that it had ever been sold under the judgment in said attachment suit."

The plaintiff's own deposition was taken on interrogatories, the 2d cross-interrogatory and the answer thereto being as follows: (*Int.*) "Did you, before the 29th March, 1888, offer for sale said house in which you resided? Did you, or not, state to several parties before said 29th March, or about that time, that you desired to sell your house for the purpose of moving to Philadelphia, or elsewhere out of the State of Alabama? Did you, or not, talk to any person about that time about your going to Philadelphia to reside? Did you not say to one or more persons that it was your intention to go to Philadelphia? Tell all about it." (*Answer.*) "I did offer my house for sale prior to March 29th, 1888. I *spoke to several persons of going to Philadelphia to visit my mother.* I did not talk to any person about going there to reside. *Montgomery has been my home for eighteen years, my children have had no other home, and my husband's remains are buried here. All else I can say is, that while my husband's relatives reside in Philadelphia, and wanted his remains brought*

*there, I brought them here. I have said to many persons that I expected to end my days in Montgomery.* I never told any person that it was my intention to go to Philadelphia to live. *I did tell parties that I wanted to sell my house to provide a smaller one.*" To each portion of this answer shown by the italics the defendant objected, and moved the court to exclude and suppress it; and he excepted to the admission of these portions of the answer.

M. B. Wharton, a witness for plaintiff, having testified that "he knew plaintiff was not about to remove out of the State on the 29th March, 1888," and, on objection made to this statement, being required to "state the facts on which his knowledge was predicated," "further answered, that he and his family were boarding with her; that he saw her making no preparations to move; that nothing was packed up, and she said nothing to them about moving." The court thereupon overruled the objection to the evidence, and the defendant excepted. Said Wharton testified, also, that Mrs. Walker did not leave Montgomery until August, 1888, and returned after an absence of a few months, and that "she was in the habit of leaving Montgomery on a visit every summer." The defendant objected to this last statement, and excepted to its admission.

J. D. Roquemore, a witness for defendant, "testified that, at the instance of said Wharton, he went to plaintiff's house with a view of purchasing her house and lot; that she offered to sell him the house and lot, and her furniture with it, stating that she wished to go to Philadelphia, and that her relations, or her husband's, he was not certain which, resided there; and said witness first testified that this conversation occurred before the 29th March, 1888." Afterwards, having refreshed his recollection by consulting a memorandum, which he had made on the 23d June, 1888, he said that the conversation occurred "a short while before, probably inside of two weeks." "The plaintiff had testified, in her deposition, that she had offered her house with some of her furniture to said Roquemore a short time before March 29th, 1888; and this part of her deposition had been read in evidence to the jury." On this evidence, the court excluded from the jury the testimony of Roquemore as to his conversation with plaintiff, and the defendant excepted.

The plaintiff offered evidence showing that she had employed a practicing attorney in Montgomery to defend the attachment suit, and that he had performed services as follows: "That he examined the papers to see if there was any ground for quashing the attachment, cross-examined the wit-

[Baldwin v. Walker.]

nesses, and required plaintiff to prove the correctness of the account sued on, and inquired into the execution of the notes sued on, they having been given by an agent;" also, the value of such services. The defendant objected and excepted to the admission of this evidence.

The defendant requested the following charges in writing, and duly excepted to their refusal:

(1.) "If the jury believe from the evidence that Crane, as agent of the Empire Paper Bag Company, before suing out the attachment consulted a reputable attorney as to whether there was ground for suing out the attachment, and informed such attorney of all the facts in his possession, and such attorney advised him to sue out the attachment; then the jury should not give vindictive damages in this case."

(2.) "If the jury believe from the evidence that the plaintiff derived the property levied on under the writ of attachment in this case through the will of her late husband, and that his estate was indebted and unsettled at the time said writ was sued out; then she had no right to sell said property at that time, and was not injured by the levy of said writ on said property."

(3.) "Vindictive damages can not be recovered against sureties on an attachment bond, when the attachment was sued out by an agent for the principal in said attachment. When so sued out, actual damages only in any event can be recovered; and not even actual or any other damages, when upon any legal ground it is rightfully sued ont. Actual damages do not include wounded feelings of the plaintiff, but are only such as she has sustained in her property, and which are the legal, natural, and proximate result of the attachment wrongfully sued out; for, if the attachment was wrongfully sued out, or if the plaintiff has failed to show that it was wrongfully sued out, then no damages at all can be recovered."

(4.) "If the jury believe from the evidence that Crane was the agent of the Empire Paper Bag Company in the collection of their debt against plaintiff, and that said Crane maliciously sued out the attachment in this case, such malice affords no ground for a recovery of vindictive damages in this case, unless it is shown that one of the partners who, at the time the attachment was sued out, composed the firm of the Empire Paper Bag Company, participated in the malice of said Crane."

(5.) "If the jury believe from the evidence that the Empire Paper Bag Company intrusted its claim against the plaintiff for collection to Crane, and Crane consulted a reputable attorney as to what course to pursue, and that attorney

[Baldwin v. Walker.]

advised him to take out an attachment, and that his principals provided him with security to enable him to sue out the attachment, upon a telegram from said attorney; and that he had no communication with his principal until the attachment was sued out; and there is no evidence that his principals were informed of the grounds upon which the attachment was sued out, and they were not informed of any malice or vexatious conduct on the part of Crane, then the jury can not give vindictive damages against the defendant."

(6.) "If the jury believe from the evidence that the attachment was not maliciously sued out, and was wrongfully sued out, they can not find for the defendant any damages which she has not shown to have sustained to her property, except nominal damages."

(7.) "The malice of Crane, if any, in suing out the attachment in this case, as agent of the Empire Paper Bag Company, can not be considered by the jury in estimating vindictive damages."

(8.) "Although the attachment may have been wrongfully sued out, the plaintiff is not entitled to recover any counsel fees incurred in defending the attachment suit, unless she had some defense against the writ of attachment, or against the debt upon which it was founded."

(9.) "Counsel fees incurred in defending an attachment suit, against which the defendant has no defense, are not recoverable in this action."

(10.) "The plaintiff is not entitled to recover any counsel fees incurred in the defense of the attachment suit of the Empire Paper Bag Company against her."

(11.) "If the jury believe from the evidence that the attachment was wrongfully sued out, they should not find anything for the plaintiff on account of counsel fees incurred in the defense of the attachment suit, unless the evidence shows that it was necessary to employ counsel to defend that suit."

(12.) "If the jury believe all the evidence, they should find for the defendant."

The refusal of the charges asked, and the several rulings on evidence to which exceptions were reserved, are assigned as error.

ARRINGTON & GRAHAM, for appellant.

A. A. WILEY, and WM. S. THORINGTON, *contra*.

WALKER, J.—A party is in no position to complain of statements of fact called out by his own questions. The de-

[Baldwin v. Walker.]

fendant's comprehensive request in his second cross-interrogatory, that the plaintiff "tell all about it," justified the plaintiff in giving her own version of the matter inquired about. Most of her answer was fairly responsive to the question. It was unobjectionable so far as it was a statement of facts pertinent to the matter of inquiry. But the plaintiff's statement as to what she had said to others about ending her days in Montgomery was not responsive to the interrogatory. They were mere expressions of intention made before the attachment was sued out. The rule against the admissibility of such declarations in a party's own behalf was stated in the opinion in this case on the former appeal.—*Baldwin v. Walker*, 91 Ala. 428. The defendant's motion to exclude that part of the answer to the second cross-interrogatory should have been granted.

The witness Wharton stated, that he knew that the plaintiff was not about to remove out of the State on the 29th of March, 1888. This could have been no more than the opinion or conclusion of the witness drawn by him from the facts. It is for the jury to decide such conclusions from the facts proved before them. The verdict should not be merely the echo of the opinions or inferences of witnesses, and such evidence should be excluded.—3 Brickell's Dig., p. 436, §§ 426 *et seq.*

Evidence was admitted, without objection, that the plaintiff did leave the State in the summer of 1888. It might be contended for the defendant that this was in pursuance of a purpose, entertained by the plaintiff before the suing out of the attachment, to remove from the State. It was competent to rebut such evidence by showing that it was plaintiff's habit to leave Montgomery on a visit every summer. The proof of such a habit would tend to explain a fact which might otherwise be treated by the jury as evidence of a permanent removal. When the question is whether or not a person was about to remove from a place at a certain time, it is plain that his actually leaving such place a few months thereafter would have less weight as evidence of a permanent removal if he had frequently gone off on a visit at that season of the year, than if his going away was an unusual occurrence.

The testimony of the plaintiff tended to show that her interview with the witness Roquemore, in regard to the sale of her house, was prior to the suing out of the attachment. Though that witness himself stated that the conversation to which he testified was had at a date subsequent to the issue of the attachment, yet, as the evidence as to the date of the interview was conflicting, the question as to when it occurred should have been submitted to the jury, with instructions not to con-

sider the plaintiff's statements to the witness Roquemore as evidence against her, if their conclusion from the evidence was that such statements had not been made until after the attachment had been sued out. As there was evidence tending to show that the statements of the plaintiff to the witness Roquemore were admissible against her, as having been made prior to the date of the attachment, it was error to exclude the testimony of that witness.

A defendant in an attachment suit may employ an attorney to look after his interests, and to see that his rights are properly guarded, even though no issue can be made in that case as to the existence of the ground of attachment, though no defense can be made to the claim sued on, and though no ground for quashing the attachment may exist. It is not unreasonable for one whose property has been seized under legal process, to employ counsel to protect it as far as the law may justify, though there may be no possibility of defeating the proceeding. The question of the propriety of incurring such expense does not depend upon the defendant's ability to make a successful defense. One whose property is in the clutches of the law may seek professional aid to secure whatever measure of protection the law may afford. Though it may not be necessary or proper to undertake a defense of the suit, the defendant may still have counsel to watch its progress, and to see that no undue advantage is taken of him. If property is involved in the suit as a result of a wrongful levy of process upon it, the necessary expense of employing counsel to secure its protection so far as the law may permit may, in the opinion of the writer, be regarded as a natural consequence of the wrong. I think that reasonable and necessary counsel fees paid or incurred for such services as could properly be and were in fact rendered by the attorney in looking after the attachment for the defendant, are recoverable as damages in a suit on the attachment bond, if the attachment was merely wrongful, or was wrongful and malicious (*Flournoy v. Lyon*, 70 Ala. 308; *Dothard v. Shied*, 69 Ala. 135; *Seay v. Green-Wood*, 21 Ala. 491; *Marshall v. Betner*, 17 Ala. 832); and that there was no error in admitting evidence tending to show the employment of an attorney in the attachment suit, or in refusing to give charges 6, 8, 9, 10 and 11 requested by the defendant. Of course, in estimating the value of the professional services rendered, due regard should be had to the circumstance that no defense was made, and that nothing more could be done than to guard the rights of a losing party. The majority of the court, however, hold that on the evidence in this case the plaintiff is not entitled to recover damages on account of the attorney's fees.

[McKinnon v. Pike County Guano Co.]

Without noticing all the defects in the several other charges requested by the defendant, the refusal of the court to give them may be justified on the following grounds respectively: Charge 1 was defective in pretermitting all inquiry as to whether the agent was diligent to ascertain the truth of the facts laid before counsel, and as to his good faith in acting on the advice when given.—*Steed v. Knowles*, 79 Ala. 446. Charge 2 was incorrect in asserting that the plaintiff had no right to sell the property, and could not be injured by a levy made upon it, because her title to it was derived through the will of her husband, and it was liable for his debts. If the title was in her, she could sell the property, subject to the liability for the debts of the decedent. Charge 3 asserts that, when an attachment is sued out by an agent, actual damages only can be recovered in any event. If the attachment was wrongful, and was sued out without probable cause, and the principal with full knowledge ratified the act of the agent, then the recovery was not limited to actual damages.—*Baldwin v. Walker*, 91 Ala. 428. This charge ignored the question of ratification and the evidence on that subject, as do also charges 4, 5 and 7. On the last trial, there was evidence tending to show that, after the attachment was sued out, the principals were fully informed of all that was done by the agent in reference thereto, and of the grounds upon which he acted, and that they ratified his conduct. In this respect, the case presents a different aspect from that presented when it was in this court on the former appeal.

For the errors above noted, the judgment must be reversed, and the cause remanded.

Reversed and remanded.