# Central of Georgia Railway Company v. Martin.

*Action against Railroad Company to recover Damages for Personal Injuries.*

1. *Use of same line of track by two railroad companies; duties and liabilities arising therefrom.*—Where two railroad companies use and operate their respective trains upon the same line of track, there is imposed a duty of watchfulness and care upon each of said companies towards the other, in the conservation of the safety of trains and the employes of the other, and there is a liability upon each for failing to discharge this duty, whereby injury would be inflicted upon the property of the other or upon the persons of the other employes.

2. *Action against railroad company for personal injuries; sufficient averments of negligence.*—In an action against a railroad company seeking to recover damages for personal injuries, counts of a complaint which, after averring the circumstances attending the injuries complained of, then avers that "the said injuries were caused by the negligence of the defendant's employes in the management and operation of defendant's said train," etc., are sufficient in their averments of negligence.

3. *Same; sufficiency of plea.*—Where two railroad companies use and operate their respective trains upon the same line of

[Central of Georgia Railway Company v. Martin.]

track, in an action brought by the engineer who was in charge of one of the engines operated by one of said companies, against the other of said railroad companies, to recover damages for personal injuries sustained by reason of a collision, which occurred between the engine upon· which the plaintiff was riding, and the train operated on said track by the other railroad company, a plea sets up no defense to the action, which avers that the plaintiff was guilty of contributory negligence, in that he ran his engine at such a rate of speed that it was impossible, after discovering defendant's train on said track, for the plaintiff to stop his said engine and prevent a collision with defendant's train; since in the absence of knowledge or notice to the contrary, the plaintiff had the right to assume that the defendant's employes in charge of the train, would discharge their duty by having the train out of the way of the plaintiff's engine, or would give seasonable notice of its position of danger.

4. *Statutory and municipal requirements as to signals, etc.; not applicable to trains operated by two railroad companies on same line of track.*—The statutory requirements that engineers shall give signals on approaching public crossings and on entering into and while passing through villages, towns and cities, and municipal requirements of the speed of trains within the limits of towns, cities and villages, have no application as to the rights and liabilities of two railroad companies which operate their trains over the same track by agreement of themselves, and impose no duty on trainmen towards other trains on the same line and the employes upon such other trains, looking to the avoidance of collisions between trains; and, therefore, the negligence of an engineer operating an engine of one of said railroad companies, to give the signal of approach on entering and while passing through a town, as required by statute, and his violation of a municipal ordinance, limiting the speed of trains in such town, can not be made the basis of an action against this company, for the result of a collision with a train of the other company on the same track, nor afford the defense of contributory negligence against his company for personal injuries sustained by him in such a collision, due to the negligence of the trainmen on the other train, in leaving their train at an unusual place on the track and failing to give proper warning of its presence.

5. *Action against railroad company for personal injuries; what can be proved under a plea of the general issue.*—Where, in an action by an engineer, who was operating an engine for a railroad company, which was using the same line of track

[Central of Georgia Railway Company v. Martin.]

with the defendant company, where the complaint counts
upon the defendant's negligence in stopping and allowing its
train to remain at an unusual place on the track, without
warning of its position, where it was run into by plaintiff's
engine, under a plea of the general issue, it is proper for
the plaintiff to show it was the duty of defendant's trainmen
to send back a flagman, in order to give proper warning to
other approaching trains, and testimony of the custom on
well regulated railroads to do this, is competent as going
to establish such duty.

6.  *Evidence; conclusions of witness not admissible.*—Mere conclu-
sions of a witness are not admissible in evidence.

APPEAL from the City Court of Birmingham.

Tried before the Hon. W. W. WILKERSON.

This was an action brought by the appellee, Joseph G.
Martin, against the Central of Georgia Railway, to re-
cover damages for personal injuries, alleged to have
been sustained by the plaintiff on account of the negli-
gence of the defendant.

The complaint, as amended, contained four counts.
The court gave the general affirmative charge for the de-
fendant as to counts numbered 2 and 3, and the cause
was tried upon issue made upon the pleadings as to
counts numbered 1 and 4. These counts are as follows:

"1.   The plaintiff claims of the defendant the sum of
thirty thousand dollars as damages, for that on and
prior to the 31st day of July, 1900, the defendant as a
body corporate engaged in operating cars for the car-
riage of freight and passengers for hire in and beyond
the county of Jefferson, in the State of Alabama, and in
its business of operating a railroad, the defendant used
in common with the Southern Railway Company a rail-
road track beyond Woodlawn in the direction of Colum-
bus, Georgia; and the plaintiff avers that on said 31st
day of July, 1900, the plaintiff was a locomotive engi-
neer in the service of the Southern Railway Company,
and as such engineer was running an engine, with a
train of cars attached, from Atlanta, Georgia, to Bir-
mingham, Alabama, and the engine which plaintiff was
operating was on said 31st day of July, 1900, coming
towards Birmingham, over the line of railroad east of
Woodlawn, which line was also being used by the said

Central of Georgia Railway Company, and the plaintiff avers that at a point about one mile east of Woodlawn the defendant's employees in charge of one of its trains had caused said train to be stopped and to be left standing on the same track which was in use by both the Southern Railway Company and the Central of Georgia Railway Company, and as the engine which plaintiff was operating, as above stated, rounded a curve coming towards Birmingham, the said engine a short distance west of said curve ran into the train of cars left standing upon said track by the employees of defendant, and the plaintiff seeing the impending collision, was forced to jump or fall from his engine to save his life; and in so jumping or falling was seriously injured in the hips, spine, shoulders, and arms and other parts of his body, and also suffered serious internal injuries, from all of which he has been rendered unable to work and earn a living, and he has been permanently disabled. And the plaintiff avers that the said injuries were caused by the negligence of the defendant's employees in the management and operation of defendant's said train with which the engine then being operated by the plaintiff collided."

4. After the same preliminary averments as in the first count, this count alleges as follows: "And plaintiff avers that at a point about one mile east of Woodlawn the defendant's employees in charge of one of its trains, suffered or permitted the same to become delayed and be on said track used by both the said Southern Railway and the defendant, and the engine which plaintiff was operating as aforesaid when turning a curve coming in the direction of Birmingham, ran into the train so being on said track and collided therewith, in which collision plaintiff was seriously injured, which injuries are specifically described and set out in the first count of this complaint, which description is made a part of this count; and plaintiff avers that his said injuries were proximately caused by the negligence of defendant's servants or some of them in charge of said train, that said negligence consisted in this, that said train was negligently allowed or suffered to be upon said track where it was when it should have been away from there, wherefore plaintiff sues."

[Central of Georgia Railway Company v. Martin.]

To each of said counts 1 and 4 the defendant demurred upon the following grounds: 1. It is not shown by said count what duty, in the management and operation of its train, defendant owed the plaintiff. 2. It is not shown that defendant neglected any duty towards plaintiff which caused or contributed to cause the injuries complained of. 3. It is not shown how or in what manner defendant's employees were negligent. 4. Said count is vague and indefinite. 5. It appears from said count that plaintiff was injured by reason of the negligence of a fellow servant.

To each of the several counts of the complaint the defendant filed nine special pleas, which were as follows: "1. It is not guilty. 2. It denies each and every allegation thereof. 3. For further answer to each count of the complaint, separately and severally, defendant says that plaintiff was guilty of negligence which proximately contributed to his injury in this, that plaintiff well knowing that the said track where the collission occurred was used in common by defendant and said Southern Railway Company, and that frequently trains of cars were on said track, propelled and drove his engine and train on said track and around said curve at such a high or rapid rate of speed that after reaching a point from which he could see defendant's said train on said track, it was impossible for plaintiff to stop his said train and prevent or avoid a collision with defendant's said train.

"4. For further answer to each count of the complaint, separately and severally, defendant says that plaintiff was guilty of negligence which proximately contributed to produce the injuries complained of, in this, that plaintiff ran his said engine and train at such a rate of speed that it was impossible, after discovering defendant's said train on said track, for plaintiff to stop his said engine and train, and prevent a collision with defendant's said train.

"5. For further answer to each count of the complaint, separately and severally, defendant says that plaintiff was guilty of negligence which proximately contributed to his injury in this, that the place where said collision

occurred and said injuries are alleged to have been received, is in a city, town or village, and defendant avers that plaintiff failed or neglected to blow the whistle or ring the bell of his said engine at short intervals on entering into, or running within, or passing through said village, town or city.

"6. For further answer to each count of the complaint, separately and severally, defendant says that the plaintiff was guilty of negligence which proximately contributed to his injury in this, that said collision occurred at or near a public road crossing, and defendant avers that plaintiff failed or neglected to blow the whistle or ring the bell of his said engine one-fourth of a mile before reaching said public road crossing, or failed or neglected to continue to blow the whistle or ring the bell at short intervals until said engine had passed said crossing.

"7. For further answer to each count of the complaint, separately and severally, defendant says that the plaintiff was guilty of negligence which proximately contributed to produce the injuries complained of in the management and operation of the engine upon which plaintiff then was, and of which he was in charge.

"8. For further answer to the first and second and fourth counts of the complaint herein, as amended, separately and severally, defendant says that to reach the point where the collision occurred, and where plaintiff was injured, plaintiff had to and did run his said engine drawing his said train into and within the limits of Woodlawn, a municipal corporation duly organized under the laws of the State of Alabama; that at and before the time of sad collision there was in force an ordinance of said municipal corporation of Woodlawn, in words and figures as follows, viz.: [Here follows ordinance prohibiting the running of engines within the corporate limits at a greater rate of speed than 8 miles an hour when running forward.] And defendant avers that the plaintiff negligently ran his said engine within the corporate limits of Woodlawn at a greater rate of speed than 8 miles per hour when run-

ning forward, in violation of said ordinance, and that the said negligence of plaintiff in this respect proximately contributed to his injury.

"9. For further answer to the first, second and fourth counts of the complaint herein, separately and severally, defendant says that at and before the time mentioned in each of said counts, the town of Woodlawn was a municipal corporation, duly organized under the laws of the State of Alabama; that said town of Woodlawn embraced the north half of southwest quarter of a certain section of land; that the railroad tracks used in common between the Southern Railway Company and this defendant ran diagonally through and across the northeast quarter of said section a distance of 650 feet to the southern line of said quarter section, where they cross said quarter section line and run outside the limits of Woodlawn across the southeast quarter of said section a distance of 650 feet to the eastern line of said southwest quarter of said section; that said tracks enter said southwest quarter of said section at said point, and run across the same in a straight line east and west; that the plaintiff ran the train upon which he was riding when injured into and within the corporate limits of Woodlawn and over and across said northeast quarter and southwest quarter of said section at the rate of over eight miles an hour; that the collision between the engine upon which plaintiff was riding and the rear end of defendant's train occurred in said southeast quarter of said section, a point 50 feet from the eastern line of the southwest quarter of said section; that defendant's said train consisted of 17 cars of a total length of 500 feet, and all of said train, except the rear 50 feet thereof was, at the time of said collision, within the corporate limits of the town of Woodlawn. That at and before the time of said collision and injury there was in force an ordinance of said municipal corporation of Woodlawn, in words and figures as follows, viz.: [Here follows ordinance prohibiting the running of engines within the corporate limits at a greater rate of speed than 8 miles an hour when running forward.] And defendant avers that the plaintiff negligently

ran his said engine into and through said northeast quarter of said section, within the town limits of Woodlawn, at a greater rate of speed than 8 miles per hour when running forward, in violation of said ordinance, and that the said negligence of plaintiff in this respect proximately contributed to his injury."

There were demurres filed to each of the special pleas. The demurrers to the third and seventh pleas were overruled, and it is, therefore, unnecessary to set them out. To the fourth plea the plaintiff demurred upon the following grounds: 1. Because said plea does not aver or show how or in what way trains of cars were frequently on the track. 2. Because said plea does not set forth any facts or allege any reason to show that plaintiff had any cause to expect defendant's train to be standing on the track. 3. Because said plea does not deny the allegations of the complaint, nor does it confess and avoid them. 4. Because said plea presents an immaterial issue. 5. Because it is not averred in said plea that plaintiff was running his engine and train at an unusual or improper rate of speed.

To the fifth plea plaintiff demurred upon the following grounds: 1. Because said plea does not show any causal connection between the plaintiff's failure to blow the whistle or ring the bell, and his injuries. 2. Because it is not averred or shown in said plea that the blowing of the whistle or ringing of the bell would have averted plaintiff's injuries. 3. Because said plea does not aver or show that the plaintiff negligently failed to ring the bell or blow the whistle.

And to the sixth plea plaintiff demurred, assigning the same grounds of demurrer as assigned to the fifth plea, and also the following additional grounds: 4. Because it is not averred in said plea where the public road crossing was with reference to the point of collision. 5. Because it does not appear from said plea how near the public road crossing was from the point of collision.

To the eight plea the plaintiff demurred upon the following grounds: 1. For that said plea does not aver that the plaintiff was, at the time said collision occurred

and said injuries inflicted, running his engine drawing his train within the corporate limits of the town of Woodlawn. 2. For that the averment of said plea do not show a violation of said ordinance as set out in said plea. 3. For that it is not averred in said plea when or at what time plaintiff ran his said engine, drawing said train in the limits of Woodlawn.

To the ninth plea the plaintiff demurred upon the following grounds: 1. Because said plea charges plaintiff with contributory negligence in violating an ordinance of the town of Woodlawn, which said ordinance is set out in said plea, and yet said plea shows on its face that plaintiff did not violate said ordinance. 2. Because said plea charges plaintiff with contributory negligence not for running his locomotive engine within the town limits of Woodlawn at a greater rate of speed than eight miles per hour at the time of the injury, but said contributory negligence is alleged for and on account of the fact that said engine had been running in the town limits of said town at a greater rate of speed than 8 miles per hour. 3. Because said plea set up contributory negligence of plaintiff by reason of the violation of an ordinance set out in said plea, and yet said plea fails to show that at the time of the injury plaintiff was violating said ordinance, and said plea shows on its face that the violation of said ordinance was not the proximate cause of plaintiff's injury. 4. Because it is not averred in said plea when or at what time plaintiff ran his said engine in the limits of Woodlawn at a greater rate of speed than 8 miles per hour. 5. Because no facts are set forth in said plea to show that the plaintiff's running his engine at a greater rate of speed than 8 miles per hour in a different section or portion of the town limits of the town of Wodlawn had the effect of causing his engine to run at an unlawful or improper speed after getting out of the corporate limits of said town and until the collision occurred. 6. Because said plea is indefinite, uncertain and confusing.

The demurrers to the 4th, 5th, 6th, and 9th pleas were sustained. To the 3d plea the plaintiff filed a general replication and the following special replication: "2. There was at the time

of the plaintiff's injury and for a long time continuously before, a rule in use by the defendant and by the Southern Railway Company, that when a train is stopped at an unusual point the flagman must immediately go back with danger signals to stop any train moving in the same direction, and the plaintiff avers that defendant's train was stopped and left standing at an unusual place, but the defendant's employes did not send back the flagman and the flagman did not go back with danger signals, and the plaintiff had the right to assume and did assume that defendant's employes would perform their duty in this regard, and that not having done so there was no train standing at the point where the collision took place."

To this special replication to the 3d plea, the defendant demurred upon the following grounds: 1. Said replication neither traverses, nor confesses and avoids the facts alleged in said plea. 2. The failure of defendant's employes to send back a flagman with danger signals, if they did so fail, would not make defendant liable to plaintiff in this action. 3. The failure of defendant's servants to send back a flagman with danger signals was no excuse for the negligence of the plaintiff in running his engine around a curve at such a high and rapid rate of speed as to render it impossible to prevent the collision with defendant's train. 4. The fact that defendant's servants did not send back a flagman with danger signals, did not give plaintiff the right to assume that defendant's servants had performed their duty in this regard, and that there was no train standing at the point where the collision took place. 5. That under the facts averred in said replication, the assumption by plaintiff that there was no train standing where the collision took place was without authority of law, and did not excuse him for his negligence in running into said train. This demurrer to the special replication was overruled; and issue was joined upon the pleadings as they were then presented.

During the trial of the case, M. H. White was introduced as a witness for the plaintiff and testified that he was the conductor on the Southern train of which the

[Central of Georgia Railway Company v. Martin.]

plaintiff was the engineer at the time he was injured. During his examination he testified as to the existence of the rules in use on the Southern Railway and also by the defendant as to the running of its trains. The witness stated among other things that he would frequently go to Weems a station on defendant's road just before reaching Woodlawn and see a train of the defendant there, and that both trains would have to register at Weems; that on the day of the accident the Southern train was about 30 minutes late. He was then asked the following question: "If the train passed there 15 minutes ahead of the Southern train, whether it would be running on the regular schedule of the witness's train?" The witness answered that it would, and thereupon he was asked the following question: "Would they (the persons in charge of said train) have known that?" The defendant objected to this question upon the ground that it called for a conclusion of the witness, and also called for incompetent, irrelevant and immaterial evidence. The court overruled the objection, and the defendant duly excepted. Upon the witness answering that the persons in charge of said train would know it, the defendant moved to exclude the answer upon the same grounds. The court overruled the motion, and the defendant duly excepted.

There were verdict and judgment for the plaintiff, assessing his damages at $4,683. The defendant appeals, and assigns as error the rulings of the court to which exceptions were reserved and the judgment rendered.

LONDON & LONDON, for appellant.—The court erred in overruling the defendant's demurrer to the 1st and 4th counts of the complaint.

The complaint must state facts out of which the duty springs and the negligent failure to perform that duty, or as declared in *Marvin Safe Co. v. Ward*, 46 N. J. L. 19, cited in 14 Ency. Plead. & Prac. 332: "The sufficiency of the pleading is to be determined on the facts from which the legal duty is deduced."—*Leach v. Bush*, 58 Ala. 145; *Ensley R. R. Co. v. Chewning*, 93 Ala. 24; *L. & N. R. R. Co. v. Lumber Co.*, 125 Ala. 237.

If every fact alleged in a complaint may be true,.and yet no breach of duty necessarily be inferred, then that complaint is insufficient. Indeed the rule may be more broadly stated as follows: That no complaint for negligence is good unless in *every* state of things consistent with the facts stated therein the defendant was bound to do or omit that which the plaintiff complains of his having omitted or done.—*Brown v. Mallett,* 57 E. C. L. 617; *Stanton v. L. & N. R. R. Co.,* 91 Ala. 382; *L. & N. R. R. Co. v. Hall,* 87 Ala. 708; *L. & N. R. R. Co. v. Mothershed,* 110 Ala. 143, s. c. 121 Ala. 650.

The question presented by the 4th plea, to which a demurrer was sustained is, Does the running of a train at such a rate of speed as to render a collision with another train rightfully on the same track inevitable, constitute negligence? It has often been decided that it is negligence, as a matter of law, for a railroad company to run trains at such a rapid rate of speed as to be unable to prevent a collision with stock on the track in the night time.—*L. & N. R. R. Co. v. Davis,* 103 Ala. 661; *L. & N. R. R. Co. v. Kelton,* 112 Ala. 533; *L. & N. R. R. Co. v. Brinckerhoff,* 119 Ala. 606.

·And in more recent cases the same rule has been declared equally applicable to the running of trains in the day time.—*L. & N. R. R. v. Cochran,* 105 Ala. 354; *C. of G. Ry. v. Stark,* 28 Sou. Rep. 411; 126 Ala. 365.

The fifth plea averring that the injuries complained of were received in a town or village and were approximately contributed to by the negligence of the plaintiff in failing to blow the whistle or ring the bell while running within the said town or village, presented a good defense. Such failure was a violation of the statute and was negligence *per se.*—Code, § 4440; *A. G. S. R. R. Co. v. Linn,* 103 Ala. 134; *H. A. & B. R. R. Co. v. Sampson,* 91 Ala. 560; *Southern R. Co. v. Bryan,* 125 Ala. 297; *Gen. of Ga. R. Co. v. Wood,* 29 Sou. Rep. 775; 129 Ala. 483; *A. G. S. R. R. Co. v. Boyd,* 27 So. Rep. 408; 124 Ala. 525.

The 8th and 9th pleas also set up a violation of the ordinance of plaintiff in running his engine at an unlawful rate of speed, and presented a good defense.—*Grey v.*

*Mobile Trade Co.* 55 Ala. 387; Shearman & Redf. on Negligence, § 344; *Crommelin v. Coxe,* 30 Ala. 318; *McManus v. State,* 36 Ala. 285; *U. P. R. Co. v. McDonald,* 125 U. S. 262; *Burton v. McClellan,* 3 Ill. 434; *Laflin v. Tearney,* 7 L. R. A. 263.

Or, as expressed by this Court: "Every person, while violating an express statute is a wrongdoer, and as such is *ex necessitate* negligent in the eye of the law, and every innocent person injured thereby is entitled to a civil remedy therefor."—*B'ham Min. R. R. Co. v. Parsons,* 100 Ala. 668; *S. & N. R. R. Co. v. Donovan,* 84 Ala. 141; *Mobile, etc., R. R. Co. v. Steiner,* 61 Ala. 594.

A. O. LANE and FRANK S. WHITE, *contra.*—The testimony of the witness White, which was objected to, was relevant and admissible. But even if not relevant, its introduction was error without injury.—*Bishop v. Blair,* 36 Ala. 85; *Milliken v. Maund,* 110 Ala. 334; *Darling v. Blackmon,* 70 Ala. 308; *Terry v. State,* 118 Ala. 85.

McCLELLAN, C. J.—Each count of the complaint shows that the Southern Railway Company and the Central of Georgia Railway Company were using, and operating their respective trains on, the line of track upon which the collision occurred in common. This fact, in and of itself, imposed a duty of watchfulness and care upon each of said companies toward the other in the conservation of the safety of the trains and employes of the other, and liability upon each for failing to discharge this duty whereby injuries should be inflicted upon the property of the other or upon the persons of the other's employes. The complaint is not open to the objection taken by the demurrer, that it fails to show that defendant owed any duty of care toward the plaintiff, an engineer operating a train of the Southern Railway Company, over this track so in the common use of both companies.

That the complaint is also sufficient in its averment of negligence on the part of the defendant, very general though that averment be, many decisions of this court establish.

It was the duty of the employes of the defendant company, in charge of its train, with which the Southern train, of which plaintiff was the engineer, collided, to have that train out of the way of the Southern train or to give seasonable notice of its position of danger toward the other train on the common track. The plaintiff, in the absence of knowledge or notice to the contrary, had a right to assume that this duty had been discharged, and to drive his engine upon that presumption. He was not bound to have and keep his engine so in hand, and running at such a rate of speed as at all times to be able to stop it short of collision with another train, which he had no reason to believe was there at all in a position to be collided with. The rule which prevails as to stock, does not obtain as to human beings, under a duty to keep out of the way, or give notice of their presence, and capable of discharging that duty, or as to trains and the like under the control of human beings, under the duty and capable of keeping obstructions out of the way, or of giving seasonable warning of their presence upon the track. The 4th plea, therefore, presented no defense to the action, and the demurrer to it was properly sustained.

The statutory requirements that engineers shall give signals on approaching public road crossings, and at short intervals on entering into and while passing through villages, towns and cities, and municipal regulations of the speed of trains within the limits of towns, cities and villages, proceed upon the assumption of a likelihood that persons may be upon the track at such crossings, and in towns, cities and villages, and was intended in the one instance to give them warning of the approach of trains, so that they may get out of the way, and in the other to require such low rate of speed, as that they may have time and opportunity to act upon the warning. All these provisions are intended, in other words, to conserve the safety of the public, the people having the right and likely to be on the railway; and the duties which these statutes and ordinances impose upon trainmen, are duties which the railway companies owe to such people. Trains operated on

the same track are no more, if as much, exposed to collisions with other trains at public road crossings in the country and at street crossings and other places in town, than at any other point along the line.   It is common knowledge that the requirements under consideration are not relied upon to secure immunity from such collisions, and that other and entirely different and distinct precautions are necessary and universally provided to that end.   Everybody knows, for example, that all trains upon the same main line are operated to the avoidance of collisions with other trains, by orders and signals given, for the most part by a central and higher authority, directly to trainmen, in respect to the movements of their respective trains, and not in any degree by these statutory signals and requirements as to speed at certain places, the duty to give and maintain which, is imposed for the different purpose of conserving the safety of the public.   And it is of no consequence that two railway companies operated their trains over the same track by agreement between themselves.   The dangers of collision between their respective trains are of the same nature as the dangers in respect of different trains of one company, and the means to avoid these dangers and prevent collisions are the same.   In the one case as in the other these means are other and distinct from the ringing of the bell, etc., at public-road crossings, and while passing into and through municipalities and the maintenance of a given rate of speed in towns.   These means are not the subject of legislative provisions.   They are adopted by the railways themselves and employed by them to prevent collisions and consequent loss of life and property—the lives of their passengers and employes and their own property and that which they transport for others.   The only statutory provision looking to the prevention of collisions is that embraced in section 3441 of the Code, imposing certain duties on trainmen at railroad crossings.   It is upon these considerations that we rest the conclusion before indicated, that neither the requirements of section 3440 of the Code nor of municipal ordinances as to the rate of speed of trains impose any duty on trainmen toward other trains on the same line or to the em-

ployes upon such other trains looking to the avoidance of train collisions; and it follows that the negligence of an engineer to give the signal of approach required by section 3440, on entering, and while passing through a town, and his violation of a municipal ordinance limiting the speed of trains in the town, could neither be made the basis of an action against his company for the result of a collision with the train of another company on the same track, nor afford the defense of contributory negligence against his action for personal injuries sustained by him in such a collision, due to the negligence of the trainmen on the other train in leaving their train at an unusual place on the track and failing to give proper warning of its presence to him. The engineer's duty under the statute and the ordinance were not owed to the other company or their trainmen, and his negligent failure to perform them cannot afford such company a cause of action nor a ground of defense. Under this view of the law, pleas 5, 8 and 9 were correctly held to be bad on demurrer.—*Foster v. Swoke,* 41 Mo. App. 137; *O'Donnell v. Railroad Co.,* 6 R. I. 211; *Beehler v. Daniels,* 19 R. I. 49; *Hamilton v. Desk Co.,* 78 Minn. 3; *Morrassey v. American Glucose Co.,* 11 N. Y. Supp. 688; *Smith v. Tripp,* 13 R. I. 152; *N. C. & St. L. Railroad Co. v. Hembree,* 85 Ala. 481; *L. & N. R. R. Co. v. Markee,* 103 Ala. 160; *L. & N. R. R. Co. v. Hall,* 87 Ala. 708; *A. G. S. R. R. Co. v. Hawk,* 72 Ala. 112; *Gilson v. Deleware & Hudson Coal Co.,* 36 Am. St. Rep. 802 and notes.

Other objections taken by the demurrers to these pleas, or to some of them, will not be considered. They were not intended to present and they make no pretence of presenting any defense of contributory negligence apart from the statute and the town ordinance. The only duty of care they attempt to allege is that supposed to be imposed by the statutory and municipal regulations. These regulations imposing no duties on the engineer toward the defendant, the pleas present no defense to this action.

The complainant counted on defendant's negligence in stopping and allowing its train to be, without warn-

ing of its position, where it was run into by plaintiff's engine, in a general way. The general issue was pleaded. Under this it was proper for plaintiff to show it was the duty of defendant's trainmen to send back a flagman to give such warning to other approaching trains and testimony of a custom on well regulated railroads to do this was competent as going to establish such duty. The fact that a special replication to special plea three, averred a rule of both the companies using this track to send back a flagman under the circumstances there existing, and a negligent violation of that rule by the defendant's servants, and ascribed the collision to their negligence, did not operate to confine the inquiry of negligence *vel non* to the issue presented by the replication. It was still open to the plaintiff to prove proximate negligence on the part of the defendant apart from the rule and its non-observance.

If it be conceded that there was no proof that rule 99 of the Southern Railway was in use by the defendant, when the rule was admitted in evidence, and that, therefore, the court erred in admitting it when offered, the defendant can taken nothing thereby, for the reason that the error was cured, or rendered innocuous, by the subsequently adduced testimony of Maloney going directly to establish the fact that the rule applied and obtained at the time and place and the circumstances attending the stopping of defendant's train at the point where it was run into by plaintiff's engine.

Assuming that evidence of knowledge on the part of those in charge of defendant's train, that they were on the schedule time of plaintiff's train, was competent as accentuating the duty that was upon them to protect both trains from collision and as aggravating their fault in not discharging their duty, the trial court yet erred in overruling defendant's objection to the question propounded to the witness White, viz.: "Would they have known that?" This obviously called for a mere conclusion of the witness, and his affirmative response was a conclusion, pure and simple. It could not be other than a conclusion, indeed, since the witness could not know as a fact what defendant's trainmen would know.—

*Green v. State,* 96 Ala. 29; *Bailey v. State,* 107 Ala. 151; *Reeves v. State,* 96 Ala. 33; *Whetstone v. Bank,* 9 Ala. 875, 886; *Baldwin v. Walker,* 94 Ala. 514. We are unable to affirm that this error did not prejudice the defendant, and for that, the judgment of the city court must be reversed. The cause will be remanded.

Reversed and remanded.