# National Surety Co. *v.* Mabry.

*Action for Malicious Prosecution for False Imprisonment.*

1. *Malicious prosecution; what necessary to maintain suit.*—In order to maintain an action for malicious prosecution, it is necessary to be shown, among other things, that the plaintiff was prosecuted through the agency of the defendant, not only maliciously, but without probable cause; and both of these requisites must concur.

2. *Malicious prosecution; advice of counsel as a defense.*—While, to an action for malicious prosecution it is a defense if the prosecution was instituted upon the advice of learned counsel, after a full statement of the facts, even though the advice was erroneous or was not warranted by the facts stated; in order for such advice to constitute a full defense, it must be shown that such advice was given upon a full and fair statement by the prosecutor of all the facts known to him, or which, by proper diligence could have been ascertained; and if the prosecutor failed to disclose any material facts known to him, or which he could have ascertained by proper diligence, advice of counsel given upon such partial statement will not constitute a defense to the action.

3. *Malicious prosecution; admissibility of evidence.*—In an action for malicious prosecution, where the defense interposed is that the prosecution was commenced upon the advice of an attorney, it is necessary to prove that the prosecutor fully and fairly laid all the information in his possession before his attorney, and such fact must be shown by proving that this was done by the prosecutor stating to the attorney everything that the plaintiff said to him, as well as everything also that had come to his knowledge concerning the commission of the offense charged in the prosecution; and it is not competent for a witness for the defendant, who consulted with an attorney, to state his view or opinion of the effect of what the plaintiff had said to him; but the witness's recollection of the particular statements made by the plaintiff to him and which he repeated to the attorney, should be testified to.

4. *Malicious prosecution; when verdict not excessive.*—In an action for malicious prosecution, where it is shown that the plain-

tiff was prosecuted for embezzlement of several hundred dollars, that he was arrested under a warrant of arrest, was committed to jail and released a few hours afterwards upon giving a bond for his apperance, that plaintiff attended court two or three times, that the defendant's attorney was present for the prosecution of the case, and the defendant's agent took an active part in the prosecution, and that after the case had been set down for trial two or three times a *nol. pros.* was entered by the defendant and the plaintiff was discharged, a verdict and judgment in favor of plaintiff assessing his damages at $7,500 can not be said to be excessive.

APPEAL from the City Court of Birmingham.

Tried before the Hon. CHAS. A. SENN.

This action was brought by the appellee, John S. Mabry, against the National Surety Company. The purpose of the suit and the facts of the case are sufficiently stated in the opinion.

Charles H. Lord was introduced as a witness for the defendant, and testified that he occupied the position of Inspector for the company in 1899 at the time of the transaction involved in the suit occurred. He testified, among other things, that as the representative of the defendant company, in reference to the alleged shortage of the plaintiff with the defendant, that he consulted Walker Percy, Esq., an attorney of Birmingham, in reference to such matter, and that he consulted Mr. Percy before the institution of the prosecution against the defendant, and that Mr. Percy advised him to have the matter brought to the attention of the grand jury. He further testified that he had talked at length with the plaintiff in reference to the alleged shortage. Mr. Lord was then asked the following question by the counsel for the defendant: "Mr. Lord, I will ask you to state whether you stated to Mr. Percy what Mabry had stated to you denying his liability in this connection?" The plaintiff objected to this question, the court sustained the objection, and the defendant duly excepted. This ruling constitutes the basis of the fifth assignment of error. During the further examination of this witness, he was asked the following question: "I will ask you, Mr. Lord, whether you stated to Mr. Percy that Mabry

had told you that there were a number of items making up this $267.00 which he had not collected and which were improperly charged to him?" The plaintiff objected to this question, the court sustained the objection, and the defendant duly excepted. This ruling constitutes the basis of the 7th assignment of error. This witness was also asked the following question: "Do you remember whether you repeated to Mr. Pecy what Mabry had said to you?" The plaintiff objected to this question, the court sustained the objection, and the defendant duly excepted. This ruling of the court constitutes the 9th assignment of error.

The jury returned a verdict in favor of the plaintiff, assessing his damages at $7,500. The defendant moved the court to set aside the verdict of the jury and to grant it a new trial upon the following grounds: "1st. The verdict of the jury was excessive. 2d. The verdict of the jury was contrary to, and not sufficiently supported by, the evidence." This motion was overruled and the defendant duly excepted. The overruling of this motion constitutes the 12th assignment of error. The defendant appeals and assigns as error the several rulings of the court to which exceptions were reserved.

WALKER PERCY, for appellant, cited *Lowenthal v. Strong*, 90 Ill. 74; *Russell v. Denison*, 45 Cal. 341; 50 Cal. 243; *Phelps v. Cogswell*, 70 Cal. 203; *Billingsly v. Maas*, 93 Wis. 176.

A. O. LANE and FRANK S. WHITE, contra.—The court erred in its rulings upon the evidence.—*Dec. C. W. &c., Co. v. Mahaffey*, 128 Ala. 242.

The court properly overruled the motion for a new trial.—*Ala. Mid. R. Co. v. Brown*, 129 Ala. 282; *Parker v. Bond*, 121 Ala. 531; *McLeod v. Shelby Mfg. Co.* 128 Ala. 25.

HARALSON, J.—The first two counts in the complaint are for maliciously, and without probable cause therefor, causing the plaintiff, on or about the 15th of October, 1899, to be arrested on a charge of embezzle-

ment; and the last two, for the false imprisonment of the plaintiff on a charge of embezzlement.

The complaint is not questioned by demurrer, and the cause was tried on the plea of not guilty.

It appears that the plaintiff was indicted at the December term, 1899, of the criminal court of Jefferson county for embezzlement, the specific charge being that he had embezled $432.60, while acting as the agent of the Hammond Packing Company,—the defendant, the National Surety Company, having been the surety on his bond to the said Hammond Packing Company; that a *capias* was issued for the arrest of the plaintiff, and he was arrested thereon, and committed to jail by the sheriff of the county in default of bond, but was released a few hours afterwards on his succeeding in giving bond; that the plaintiff attended court for trial two or three times, and the prosecutor's attorney was there for the prosecution of the case, and one Lord, the defendant's agent, took an active part in the prosecution, and that after the case had been set down for trial two or three times, a *nol. pros.* was entered by the defendant, and the plaintiff discharged. The plaintiff thereupon, on the 20th day of May, 1900, instituted this action for the recovery of damages for malicious prosecution and false imprisonment, and on trial of the cause, a judgment was rendered for the plaintiff against the defendant, for $7,500.00, to reverse which judgment the appeal is prosecuted by the defendant.

There were exceptions reserved by defendant to the rulings of the court, which were assigned as error, numbered from one to twelve. In the written brief and argument filed, the defendant insists on only three of these,—the 7th, 9th and 12th, the last being the overruling of the defendant's motion for a new trial. We confine ourselves to the assignment of errors which are here insisted on.

It may be regarded as well settled, that an action for malicious prosecution will not lie, unless it be shown by the plaintiff among other things, that he was prosecuted through the agency of the defendant, not only ma-

liciously, but without probable cause, and both of these must concur.—*McLeod v. McLeod,* 73 Ala. 42; 2 Greenleaf's Evidence, 453.

Again, it may be stated as settled, that it is a full defense to the action, that the prosecution was instituted on the advice of learned counsel, given on a full and fair statement by the prosecutor of all the facts known to him, or which by proper diligence he could have ascertained, even though the advice was erroneous, or was not warranted by the facts stated; but, if the prosecutor failed to disclose any material facts known to him, he will not be protected on the advice of counsel founded on a partial statement.—*Steed v. Knowles,* 79 Ala. 446; *Jordan v. A. G. S. R. R. Co.,* 81 Ala. 226; *Baldwin v. Walker,* 94 Ala. 514; *Marks v. Hastings,* 101 Ala. 173.

The chief contention made by the defendant seems to be, that Lord, the agent of the defendant, acted under the advice of counsel. In support of this contention, it is not denied, but admitted, that it was necessary to prove that Lord used proper diligence to ascertain all the material facts in the case, and fully and fairly laid before the attorney the facts known to him, of which he had information. In his examination as a witness to make out his defense for his company, it was proper and necessary for Lord to state what information he had laid before the attorney, so that the jury under all the evidence, might determine, whether he had submitted to the attorney all the facts known to him, or had made only a partial statement of them.

It appears that the Hammond Packing Company made out and sent to the defendant company an itemized statement of the shortages it claimed that the plaintiff sustained to it, which several amounts the said Packing Company claimed of defendant as the surety on plaintiff's bond. This statement, the defendant company placed in the hands of the plaintiff, as constituting the items of misappropriation by him, or, which it claimed he had embezzled, and requested him to make explanation, if he could, as to any one or all of the items.

The statement consisted of 48 items. The first, two for errors as claimed in remittances,—in the one case, of

$1.50, and in the other of $1.00. The second claim was based on collections from 13 specified persons from which it was claimed he had made collections of specified amounts which he had not remitted, all aggregating $70.60. The third of the names of 27 persons from whom he had collected amounts which were specified, and not remitted, aggregating $347.93, less $80.16, "sundry overpayments," making this claim $267.77. It also claimed that in 5 instances where it had assigned stocks (of meats) to him, he was short and had not paid the amounts specified in each case, aggregating $112.56; and in addition to all these, they claimed he had drawn on the Alabama National Bank a draft in favor of said Packing Company, which he did not have sufficient money in the hands of said bank to pay by $298.53, when the draft was presented for payment. These several amounts when consolidated, aggregate $751.96, which they credited by commissions due him of $218.17, and by cash $101.18, amounting together to $319.35, which taken from the $751.96,—the shortage claimed,—left $432.61, the amount for which plaintiff was indicted for having embezzled.

When this statement of shortages was placed in the pliantiff's hands for explanation, he made answer thereto in writing, explaining each item. The first two, of $1.50 and $1.00, he stated he knew nothing about, but presumed they were, possibly, errors in the addition of some remittances that he sent the Packing Company, but he could not state definitely. He admitted he owed the item of $70.60, but that the company held his due bill for the same, with the understanding with them, that this amount would be deducted from such commissions as would be due plaintiff by the company, accruing from the sale of their products by him. He denied that the item of $267.70 was correct, as no such amounts comprising that claim, were collected by him, except such as he had remitted. He further stated, that a good portion of this amount is made up of some personal debts of his own that were settled by the auditor of the Packing Company who checked up his accounts, and

now. claims that plaintiff had collected the money and failed to remit. As to the $112.50, for products claimed to have been shipped to him and not accounted for, he stated that the claim was absolutely false; that that claim was for goods which had not been in his hands, or, as he further explained in his testimony, that those goods arrived after he had left the service of the company, and had been taken possession of by the company's agent.

The claim of the overdraft on the Alabama National Bank of $298.53, he stated, was a personal debt of his own; that it was his own personal overdraft with the bank for which he was responsible.

While Lord was being examined for the defendant, the following question was asked him by the defendant: "I will ask you, Mr. Lord, whether you stated to Mr. Percy [who was the attorney from whom he took counsel] that Mabry [the plaintiff] had told you there were a number of items making up this $267.70, which he had not collected, and which were improperly charged to him?" An objection was properly sustained to this question, which ruling it is insisted was erroneous. While admitting that it was necessary to prove that Lord had fully and fairly laid all the information in his possession before his attorney, the ground on which counsel for defendant insists that the question should have been allowed to be answered is, that the conversation between Mabry and Lord and between Lord and his attorney, had occurred about two years before the trial; and while admitting that ordinarily it would have been proper for Lord to have stated what information he laid before his attorney, so that the jury might compare the two statements and determine whether Lord fully complied with this duty, still, in view of the large number of items involved, and the length of time which had elapsed since the conversation, the defendant should have been allowed to answer the question. This seems to be an admission that the question called for illegal evidence, but attempts to justify it on the reasons advanced, which are not available. It is fairly inferable from the whole of this witness's testimony, that he did not remember

precisely what Mabry had said in reference to the items of the account furnished him, or what he had told his attorney that Mabry said to him; and the question to the witness was an effort to have him state his view or opinion of the effect of what Mabry had said to him; rather than his recollection of the particular statement that Mabry had made. What has been said applies also to the 5th assignment of error.

The question, the basis of the 9th assignment of error, is subject to the same objection, in part, as the last. The witness should have been asked what he repeated to the attorney, as to what Mabry had said to him. It was essential to make out the defense,—that the defendant had acted under the advice of counsel,—to show that Lord had told the attorney everything that the plaintiff had said to him, as well as everything else that had come to his knowledge concerning the alleged shortage. The items of collections not remitted as claimed, numbered collections from forty odd people, and the witness had testified that he could not remember what plaintiff had said about each of them. This was the misfortune of the defendant. If the indictment was procured for the embezzlement of each of these items, as the evidence tends to show it was, the plaintiff was entitled, on the defense set up,—that the defendant acted in procuring the indictment, on the advice of counsel,—to all that the witness stated to counsel, as a basis for that advice. It was the defendant that was calling for this information, and the plaintiff was entitled, not to the conclusion of the witness, that he had made certain disclosures to him, but to all the disclosures that he had actually made.

So far, as brought to our attention, on the insistance of counsel, there appears to be no error in the ruling of the lower court. It is insisted, however, that the court should have granted the new trial asked for by the defendant, on the ground that the verdict was excessive.

There is no legal measure of damages in cases of this character. That a jury are authorized to award exemplary or punitive damages, when a wrongful act is done willfully, in a wanton or oppressive manner, or even when it is done recklessly, or in open disregard of one's

civil obligations and of the rights of others, is not de-
nied.—*Frothingham v. Adams Ex. Co.* 1 L. R. A. 474,
and authorities there cited. Nor can it be questioned,
that when the damages allowed are so excessive as
to warrant the belief that the jury must have been mis-
led by some mistaken view of the merits of the case, the
court may interefere and set it aside.—Sedgwick on
Measure of Damages, (7th ed.), 655, N. a. as to excessive
damages.

On the subject of motion for a new trial for excessive
damages, Mr. Newell in his work on Malicious Prosecu-
tions, adopts approvingly what was said on the subject
by Lord MANSFIELD, in the case of *Gilbert v. Burtenshaw,*
Cowper, 230: "I should be sorry to say that in cases of
personal torts no new trial should ever be granted for
damages which manifestly show the jury to have been
actuated by passion, partiality or prejudice. But it is
not to be done without very strong grounds, indeed, and
such as carry internal evidence of intemperance in the
minds of the jury. It is by no means to be done when
the court may feel that, if they had been on the jury,
they would have given less damages, or where they might
think the jury themselves would have completely dis-
charged their duty in giving a less sum. Of all the cases
left to the jury, none is more emphatically left to their
sound discretion than such a case as this, and, unless it
appears that the damages are flagrantly outrageous and
extravagant, it is difficult for the court to draw the line."
He also quotes what Justice STORY said on the same sub-
ject,—that the verdict should not be set aside for exces-
sive damages, in cases of tort, "unless the court can
clearly see that the jury have committed some very gross
and palpable error, or have acted under some improper
bias, influence or prejudice, or have totally mistaken the
rules of law by which the damages are to be regulated."
*Whipple v. Manufacturing Company,* 2 Story, 661.

The lower court, after due consideration, denied the
motion. Having heard all the evidence on the trial of
the cause, the learned judge was of the opinion that the
verdict should not be disturbed. In this, we are unable
to conclude that he committed reversible error.

Affirmed.