[Birmingham Railway Light and Power Co. v. Mosely.]

# Birmingham Railway Light and Power Co. *v.* Mosely.

## *Action for Death of Servant.*

(Decided Jan. 11, 1910.—51 South. 424.)

1. *Master and Servant; Fellow Servant; Who Are.*—A motorman on one car of a street railway is the fellow servant of a conductor on another car of the same railroad operating cars over the same line, since both work for the same master on the same line and for the same purpose.

2. *Same; Statutes; Application.*—Subdivision 5, section 1749, Code 1896, applies to electric street railways.

3. *Same; Injury to Servant; Complaint.*—In an action by an administrator for the death of a motorman in a collision, a count alleging that a car operated by the motorman ran into a car standing on the track, and that the collision was caused by the negligence of the conductor in control of the latter car, sufficiently alleges the negligence of the conductor, since there is no presumption that an administrator has knowledge of the duties of a conductor which were violated and which caused the injury.

4. *Same.*—Where the action was by an administrator for the death of a motorman caused by a collision, a count alleging that intestate's death was caused by the negligence of some person whose name is unknown to plaintiff, and who had charge of a car on a track, and that the negligence consisted in this; said person negligently failed to protect the car with any light or signal, and that said person was one, to-wit, who was conductor of the car, etc., is not so vague and indefinite as to be demurrable on that ground since the 1st, to-wit, refers to all that succeeds it, while the 2nd, to-wit, refers to only the name C, and no statement under the 1st, to-wit, is repugnant to what preceded it, and if the words, "that such person was one, to-wit, C," is repugnant, such words must be treated as surplusage.

5. *Same; Regulation; Municipal Ordinances.*—Municipal ordinances regulating the speed of electric cars are for the protection of the public and not for the benefit of employes operating the car.

6. *Same; Rules of Employment; Effect.*—Where there is a general rule regulating the conduct of servants which applies under ordinary conditions, and a special rule for extraordinary conditions, the general rule is superseded by the special rule when the extraordinary conditions exist, and the violation of a special rule under extraordinary conditions cannot be excused by an observance of the general rules.

7. *Same.*—A street railway cannot make a schedule for a car and also make a rule which makes the schedule impossible under usual and ordinary conditions, and then impute negligence to the motorman for doing that which was necessary to make the schedule.

[Birmingham Railway Light and Power Co. v. Mosely.]

8. *Same; Evidence.*—Where the action was for the negligent death of the servant, and some of the rules of the company were pleaded as a defense, it was not error to permit the reading to the jury of that part of the rule book which was in a sense the inducement to every rule in the book, and therefore, a part of the same.

9. *Pleading; Complaint; Knowledge of Other Parties.*—Less particularity is required in pleading matters in a complaint which are in their nature more within the knowledge of the defendant than the plaintiff, than in other cases.

10. *Same; Videlicit.*—The general rules as to allegations laid under a videlicit is that if they be impossible or repugnant to the preceding matter they must be regarded as surplusage; but where they are used to explain what goes before them, and are consistent with the preceding matter, they are material and must be traversed.

11. *Same; Construction.*—A pleading is always construed most strongly against the pleader.

12. *Death; Negligence; Evidence.*—When the action was by an administrator for the death of an employe who left a mother and younger brother surviving him, it was competent to show the financial and physical condition of the mother and younger brother; it being permissible in such actions to show that intestate had persons who would have been distributees, had he left an estate, dependent on him for support, and also the amount he contributed to their support.

13. *Same; Contributory Negligence.*—Unless decedent's contributory negligence proximately contributed to his death, his negligence will not bar a recovery for his death.

14. *Witnesses; Examination; Recalling Witnesses.*—It was within the discretion of the trial court to permit a witness to be recalled for further examination before the examination of witnesses had closed, and not revisable unless abused.

15. *Charge of Court; Not Supported by the Evidence.*—Charges requested which are supported only by evidence properly excluded are properly refused.

16. *Appeal and Error; Review; Failure to Raise in Lower Court.*—This court will not consider on appeal objections to questions and the answers thereto not raised in the trial court.

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Action by Charles A. Moseley, administrator of Charles S. Moseley, deceased, against the Birmingham Railway, Light & Power Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

All the counts of the complaint were stricken, except the fifth and seventh. The seventh count is suffi-

ciently set out in the opinion. The fifth count was as follows: "Plaintiff, Charles A. Moseley, as administrator of the estate of Thomas S. Moseley, deceased, claims of the defendant, Birmingham Railway, Light & Power Company, a corporation, $30,000 as damages, for that heretofore, on, to wit, the 29th day of December, 1906, defendant was a common carrier of passengers for hire by means of street railway cars propelled by electricity in Jefferson county, Alabama, and on said date plaintiff's intestate, Thomas S. Moseley, was in the employment of defendant as a motorman upon one of its said street railway cars, and while on said car and in the service and employment of defendant, and engaged in and about his duties as such employe, said car collided with great force and violence with another one of defendant's cars which had been stopped and was standing on the street railway track of defendant, and plaintiff's said intestate was thereby so injured that he died, to plaintiff's damage in the sum aforesaid. Plaintiff avers that his said intestate's death was caused by reason of and as a proximate consequence of the negligence of the conductor, to wit, one Cornelius, whose name is otherwise unknown to plaintiff, in the service and employment of defendant, and who then and there had charge or control of the car upon the track of defendant's said railway, with which the car upon which plaintiff's intestate was collided." The demurrers sufficiently appear from the opinion.

The assignments of error referred to in the opinion are as follows: "(15) The court erred in overruling appellant's objection to the following questions propounded by appellee to witness James Moseley. (16) Her answer thereto that he was afflicted. (17) In overruling appellant's objection to the following questions propounded by the appellee to the same witness: 'Now,

I will ask you to tell the jury whether or not that boy was afflicted.' (18) Answer of witness to last-named question. (19) Overruling question propounded by appellee to same witness: 'I will ask you whether or not this boy of yours contributed to your support.' (20) Answer to that question. (21) Question propounded by appellee to the same witness: 'Then I will ask you to tell the jury how your other boy was afflicted—what was his physical condition?' (22) The answer: 'He was afflicted in his head. He has a dead bone in his head and catarrh, which he has had all his life.' (23) Question propounded by appellee to the same witness: 'I will ask you whether or not he was able to work and earn money.' (24) And the answer to that question. (25) Question propounded by appellee to same witness: 'I will ask you to tell the jury whether or not you have any means of support, other than what you receive from him.' (26) The answer thereto: 'I was entirely dependent upon him.' " "(32) Question propounded by appellee to witness McCary: 'At a greater speed than usual?' (33) And the answer thereto: 'No, sir; I don't think we were going any faster than we should go.' (34) The court below erred in overruling appellant's motion to exclude what was inscribed on the first page of appellant's rule book. (35) Sustaining appellee's objection to the following question propounded by appellant to the witness Jones: 'Did, or not, the signal you gave Mr. Moseley indicate what was ahead of him?' (36) Sustaining objection to question propounded by appellant to same witness: 'Mr. Jones, I will ask you to tell the jury whether or not the signal which you gave Mr. Moseley meant for him to stop the car, for the reason that there was danger ahead of him.' (37) Sustaining appellee's objection to the following question propounded by appellant to the same witness:

'What did the signal you gave Mr. Moseley indicate to him as to the stopping of his car?' (38) Sustaining objection to appellant's question to same witness: 'Tell the jury whether or not you did everything in your power to get him to stop the car.' "

The following charges refused to the defendant: Charge 1 is set out in the opinion. (5) "If the jury believe from the evidence in this case that Moseley, the deceased, was warned or signaled to stop the car, and thereafter negligently failed to do so, and that his negligence in this regard proximately contributed to his death, you must find a verdict in favor of the defendant."

Charge 1 given at plaintiff's request is as follows: "Even though you should believe from all the evidence that Moseley, the intestate, negligently ran the car at a high rate of speed, yet, unless you further believe from the evidence that such negligence proximately contributed to his death, then such negligence would not bar plaintiff's right to recover."

TILLMAN, BRADLEY & MORROW, for appellant.—Subdivision 5, section 1749, Code 1907, has no application to street railways propelled by electricity.—*Thunk v. St. P. C. R. R. Co.,* 52 Am. St. Rep. 608; *U. S. v. U. P.,* 91 U. S. 72; *Smith v. Townsend,* 148 U. S. 490; *Riley v. G. C. R. R. Co.,* 35 S. W. 826; 25 Pac. 1084; 41 Fed. 556; 65 Ia. 742. For the same reason demurrer should have been sustained to count 7. Counsel discuss other assignments of error relative to pleading, but without citation of authority. Counsel also discuss assignments of error as to evidence, but without citation of authority. The court erred in refusing the affirmative charge as to the 7th count.—*A. G. S. v. Davis,* 119 Ala. 588; *L. & N. v. Bouldin,* 110 Ala. 105. The court erred in refusing the

[Birmingham Railway Light and Power Co. v. Mosely.]

affirmative charge as to the 5th count. The court erred in refusing defendant's charges 5 and 7.—*L. & N. v. Mothershed,* 110 Ala. 143. This is true also of charges 8, 9 and 10. Counsel discuss other charges refused, but without citation of authority.

STALLINGS & DRENNEN, for appellee. Subdivision 5, section 1749, Code 1907, applies to street railways operated by electricity, as well as to steam railways.—*Bir. Southern v. Powell,* 136 Ala. 232; *Ensley Ry: v. Chewning,* 93 Ala. 24; *L. & N. v. Anchors,* 114 Ala. 492; *Bir. R. & E. Co. v. Bailor,* 101 Ala. 408. The count was sufficient in other respects.—*A. G. S. v. Davis,* 119 Ala. 572; 134 Ala. 293; 137 Ala. 234. Count 7 was not subject to the demurrers interposed.—*Woodward I. Co. v. Howard,* 114 Ala. 191. The court did not err in sustaining demurrers to plea 4.—*C. of G. Ry. Co. v. Martin,* 138 Ala. 531; *Bir. R. & E. Co. v. Baker,* 126 Ala. 135. The court properly overruled demurrers to the replication to plea 14.—*Brandon v. L. & N.,* 111 Ala. 275; 94 Ala. 545; 91 Ala. 514. The court did not err as to evidence.— *L. & N. v. Banks,* 132 Ala. 471. Counsel discuss charges given and refused, but without citation of authority.

EVANS, J.—This suit was brought by the appellee, Chas. A. Moseley, as the administrator of the estate of Thomas S. Moseley, deceased, against appellant, Birmingham Railway, Light & Power Company, a corporation. Plaintiff claimed damages for the alleged negligence of one of appellant's servants, to wit, one Cornelius, a conductor on appellant's street railway, while in discharge of his duties as such conductor, which proximately caused the death of plaintiff's intestate. There were many counts to the complaint, but all of them were eliminated by the action of the lower court, except

counts 5 and 7, both of which counted upon the negligence of the conductor of the car into which plaintiff's intestate's car, upon which he was motorman, was run.

The defendant below, appellant here, insists upon questions raised by his demurrer to counts 5 and 7: (1) That said counts show that plaintiff's intestate, who was a motorman on one of defendant's street railway cars, and the said conductor who had charge of the car on defendant's said street railway, into which the car upon which plaintiff's intestate was, was run, were fellow servants; and (2) that subdivision 5 of section 1749 of the Code of 1896 does not apply to street railways operated by electricity, but only to railroads operated by steam, which traverse the country at large, and which are more dangerous to operate than the cars upon an electric street railway.

We think there can be but little doubt that a proper construction of law would declare a motorman upon one car of a street railway to be a fellow servant of a conductor upon another car of the same railway operating cars over the same lines. Any other construction would be too narrow. Both working for the same master, over the same lines of railway, and for the same purpose, to wit, transporting passengers from one point to another along such line of railway, we declare to be fellow servants. But we think that to declare that the fifth subdivision of section 1749 of the Code of 1896 only applied to railroads operated by steam locomotives, which traverse the country at large, would also be too narrow a construction. It may be true that, as counsel for appellant ably contend, there were no railways operated by electricity at the time this statute was first passed by the Legislature; and it may also be true that the hazard and danger of operating steam locomotives, with heavy trains, which traverse the country at large, is

much greater than that of operating light cars propelled by electricity upon a street railway. But many of the dangers of the former differ from those of the latter in degree rather than character. In operating railways, whether by steam or electricity, which involves more or less hazard to employes as well as passengers, and where most duties are performed out of sight or immediate superintendence of the master, the law must needs not only make the master careful as to the kind of servants he employes, but must hold the master responsible, under many circumstances, or conditions, for the acts of such servant or employe, not only for the safety of the public, but for the safety of other servants or employes. Whether the motive power be steam or electricity, or whether operated through the country or through the streets of a city, whether heavy trains or light cars are used, they are both railways, and similar dangers are encountered in each; and the negligence of an impecunious servant might become a menace to the life and limb of other servants, as well as to passengers, for which there would be no adequate redress. It would seem also that the Legislature has placed such construction upon subdivision 5 of section 1749 of the Code of 1896, because in subdivision 5 of section 3910 of the Code of 1907 the words "electric motor" are inserted without changing any other word in said subdivision. We are not aware that any of the railroads now transporting passengers and freight across the different parts of the state use electric motors; while practically all, if not all, of the street railways in the state use them exclusively to run their cars. When this law (section 1749 of the Code of 1896) was first passed, it is evident that the Legislature did not then anticipate the running of cars by an electric motor, inasmuch as it made no provision for damages resulting from the neg-

[Birmingham Railway Light and Power Co. v. Mosely.]

ligence of the person in charge of an "electric motor."
It would seem also that the Legislature considered that
street railways fall into the general purview of the
statute, and under the general designation of "railway"
in said statute, inasmuch as they have added the words
"electric motor" without changing any other words of
the statute. There is furthermore nothing in the sub-
stance or terms of this statute which would make it in-
applicable to street railways. It has been held that
other statutes regarding railroads were applicable to
street railways in so far as they were consistent with
the genius of street railways, and beneficial in their
character; although other provisions of the law might
have no field of operation when applied to street rail-
ways.—*Birmingham So. R. R. v. Powell,* 136 Ala. 232,
33 South. 875; *Ensley Ry. Co. v. Chewning,* 93 Ala. 24,
9 South. 458; *L. & N. R. R. Co. v. Anchors,* 114 Ala.
492, 22 South. 279, 62 Am. St. Rep. 116.

The averments of negligence in counts 5 and 7 are,
according to the former rulings of this court, sufficient.
—*A. G. S. R. R. Co. v. Davis,* 119 Ala. 572, 24 South.
862. It would seem from the standpoint of reason that
if plaintiff's intestate were living, and suing for injur-
ies received, greater particularity in the averments of
negligence should be required for the reason that one
would naturally presume that the motorman would be
acquainted with the duties of the conductor which had
been violated, and which caused his injuries; but where
the motorman is killed, and his administrator sues, no
such presumptions arise, and the same reasons which
permit statements of mere conclusions, as to negligence,
where a passenger sues for injuries received while rid-
ing on a car or train, are equally cogent here. As
said in *L. & N. R. R. Co. v. Jones,* 83 Ala. 376, 3 South.
902, first headnote: "It is a general rule of pleading

that in stating or averring matters which are, in their nature, more within the knowledge of defendant than of the plaintiff, less particularity is required than in other cases," etc. For reasons above given and the authorities cited, we hold that counts 5 and 7 were sufficient so far as the allegations of negligence were concerned.

But there is another ground of demurrer to count 7 which is urged by appellant, viz., "that said count is vague and indefinite." Said count, in respect to the acts of negligence, after amendment, reads as follows: "Plaintiff avers that his intestate's death was caused, and plaintiff suffered said damages, by reason and as a proximate consequence of the negligence of some person whose name is to the plaintiff unknown, and who then and there had charge or control of a car upon a track of defendant's railway, and that said negligence consisted in this, to wit, said person negligently failed to protect said car with any light or signal by which plaintiff's said intestate should have and could have been warned, and plaintiff avers that said person is one, to wit, Cornelius, and that he was the conductor of the car into which was run the car upon which was plaintiff's intestate." As said in *Gleason v. McVickar*, 7 Cow. (N. Y.) 42, 43: " The general rule in relation to allegations under a videlicet, or scilicit, seems to be that if they be impossible, or contrary, or repugnant to the preceding matter, they shall be rejected as surplusage; but where they are used to explain what goes before them, and are consistent with the preceding matter, they are material and traversable." In *Brown v. Berry*, 47 Ill. 175, 177, we find the following: "The use of the videlicet is to avoid a variance and to avoid a positive averment, which must be strictly proved." Under these authorities, which define the use of the videlicet, as far

as the case at bar demands, we hold that said count 7 is not subject to the ground of demurrer last stated. The first "to wit" refers to all that succeeds it; whereas, the second "to wit" refers only to the name "Cornelius." No other statement under the first videlicit is repugnant to what precedes it, and if the words "that said person is one, to wit, Cornelius," are repugnant, they should be treated as surplusage; but we consider it rather in the light of the second rule laid down in the case of *Brown v. Berry, supra,* that it was so stated to avoid a positive averment of the name of the conductor, which must be strictly proved. It can make no difference upon the merits of the case which of the two views we take of it, as there remains the averment that injury was due to the negligence of the conductor into whose car plaintiff's intestate's car was run. Furthermore, the demurrer is general and does not point out the defect, if there is any.

The demurrer to plea 4 was properly sustained on the authority of *Central of Georgia Ry. Co. v. Martin,* 138 Ala. 531, 36 South. 426. City ordiances regarding the speed of cars are made for the protection of the public, where they have a right to cross or be upon the track of the railway, and not for the benefit of employes operating cars upon such railways.

The ninth assignment of error is to the action of the court in overruling defendant's demurrer to replication No. 2 as an answer to defendant's plea No. 14. We are of opinion, after due consideration of this assignment of error, that the court erred in overrulingg defendant's demurrer to replication No. 2 as an answer to plea No. 14. Plea No. 14 sets up the breach by plaintiff's intestate of a proper and highly salutary rule of defendant, and assigns the same as negligence. The replication admits the rule and the breach, and attempts

to justify the breach by stating that there was another rule, or requirement of defendant, by which he was required to make certain points within a certain time. The rule stated in the replication, when construed most strongly against the pleader, as we must, is a general one, which applies under usual and ordinary conditions; whereas, the rule mentioned in the plea was a special rule, and applied only under the special conditions therein mentioned. Where there is a general rule that applies under usual and ordinary conditions, and a special rule which applies under extraordinary conditions, the special rule supersedes the general rule, when such extraordinary conditions obtain. No other construction could give scope for the operation of both rules. A plea, therefore, setting up a breach of the special rule, and averring that such extraordinary conditions existed at the time of the breach, cannot be answered by setting up an observance of the general rule, which applied to usual and ordinary conditions.

Demurrer to replication No. 2 as answer to plea 15 was properly overruled. The replication was a perfect answer to the plea, as both the rule set up in the plea, and the one set up in the replication, were general rules, made to apply under general conditions; and the defendant could not make a schedule for the car of plaintiff's intestate, and also make a rule, which made the schedule impossible under usual and ordinary conditions, and then hold said intestate negligent in doing that which was necessary to make the schedule.

Assignments of error Nos. 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, and 26 are all considered and argued together by appellant, and we think properly so. The question involved in these assignments of error was the inquiry by appellee into the financial and physical condition of plaintiff's intestate's mother and his younger

brother. We are of opinion that there was no error in the ruling of the court on the matters involved in these assignments of error; and, instead 'of being contrary to the opinion in the case of *Ala. Mineral R. R. Co. v. Jones,* 121 Ala. 119, 25 South. 814, these rulings are consistent therewith. The object of this inquiry was to show that the said mother and brother were entirely dependent upon plaintiff's intestate for support, and that he was in fact supporting them. In the case above cited, where the facts showed that the distributees were minor children of deceased, this court, through Chief Justice McClellan, said: "It is unnecessary, where a recovery is sought of the amount of which the deceased would have expended on defendants had his expectancy of life not been disappointed, to prove more *than that he had persons who would have been distributees, had he left an estate, dependent upon him for support, and the amount he contributed to their support,* and there is no legitimate occasion to show the ages of the minor children." The italics above are ours, simply to point out the necessity of the line of inquiry pursued by appellee. If this line of inquiry was legitimate to show that plaintiff's intestate "had persons who would have been distributees, had he left an estate, dependent on him for support, and the amount he contributed to their support," such evidence could not be excluded from the jury because, forsooth, it might have had a tendency to increase the amount of the verdict.

Assignments of error 32 and 33 are without merit, in that the question and answer were not subject to the general objections interposed, and appellant's counsel argues a different ground from those interposed.

Assignment of error 34 is without merit. The court properly allowed the reading to the jury that part of defendant's rule book, for the reason that some of de-

fendant's rules were pleaded, and the part read was, in a sense, the inducement to every rule in the book, and therefore part of the same.

Assignments of error 35, 36, 37, and 38 are without merit. It was not shown that the signal given by witness was such in use by defendant, or that plaintiff's intestate had any knowledge of what it meant. Also assignments 39 and 40 are without merit, as the matter objected to was material and relevant, and to allow a witness to be recalled for further examination, before the examination of witnesses had closed, was within the discretion of the trial court, and no abuse of that discretion is shown.

The forty-second assignment of error is to the refusal of the court to give the following charge requested by defendant: "If the jury believe the evidence in this case, 'the plaintiff cannot recover under the seventh count of the complaint." Both this and the following written charge requested by defendant were properly refused: "If the jury believe the evidence in this case, plaintiff cannot recover under the fifth count of the complaint." It is a question for the jury, under each count, under all the evidence upon the issues as raised by the pleading, to say whether the conductor in charge of the front car was negligent and thereby proximately caused the injury complained of; and whether or not plaintiff's intestate was guilty of negligence which proximately contributed to his injuries.

Charge No. 5 asked by defendant was properly refused by the court, as all the evidence which would have supported and authorized said charge was properly ruled out by the court.

The assignments of error Nos. 48 and 59, both inclusive, cannot be considered for the reason that there are no charges in the bill of exceptions which were refused

[Whitmore v. Alabama Consolidated C. & I. Co.]

to defendant numbered 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18.

Charge No. 1 given at the request of plaintiff was properly given. It needs no argument to sustain the ruling of the court. It merely states that if plaintiff's intestate was guilty of negligence, yet, if such negligence did not proximately contribute to his death, then such negligence would not bar the plaintiff's right of recovery. This is elementary.

For the errors pointed out, the case is reversed and remanded.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and SAYRE, JJ., concur.