(94 South. 767)

## BRADLEY v. DEATON. (6 Div. 460.)

(Supreme Court of Alabama. Dec. 14, 1922.)

**1. Master and servant ⬅259(7)—Count under statute for negligence of conductor in control of car held good.**

A count of the complaint attributing the death of a motorman to "the negligence of the conductor, whose name is unknown to plaintiff, in the service and employment of defendant, and who then and there had charge or control of the car upon the track of defendant's said railway with which the car upon which plaintiff's intestate was collided," *held* sufficiently to describe the control superintendency referred to therein, under Employers' Liability Act (Code, § 3910, subd. 5), for a defendant may be sufficiently advised by a less specific description of the subject of the charge or control'in an action under subdivision 5 than is requisite in an action under subdivision 2.

**2. Master and servant ⬅286(30)—Negligence of conductor held for jury.**

In an action for the death of a motorman caused by a collision, evidence as to duty of conductor of car ahead of deceased's car to go back on track, when his car stopped in a dense fog, to warn approaching cars, and failure to perform such duty, *held* to preclude defendant's right to the general affirmative charge on the theory that there was no evidence tending to show negligence on the part of such conductor.

**3. Master and servant ⬅264(13)—Proof of failure to warn held to support allegation of negligence in charge or control of car.**

In an action for the death of a motorman caused by a collision with a car ahead, allegation of negligence of the conductor of the car collided with in his "charge or control" of the car was not unsupported by evidence of failure or fault in giving warning signal, when stopping in dense fog, to warn following cars, as required by the company's rules.

**4. Trial ⬅145—Error to refuse instruction eliminating question of negligence of servant whose negligence was not declared on.**

In an action for the death of motorman caused by a collision with a car ahead, where the sole negligence charged in the complaint was that of the conductor of the car collided with, a trailer, and there was evidence from which negligence of the conductor of the motorcar drawing the trailer might possibly be inferred, it was error to refuse defendant's requested instruction that no verdict could be found for plaintiff on account of any act or omission on the part of the conductor of the motor car.

**5. Trial ⬅145—Error to refuse instruction eliminating question of negligence of servant whose negligence was not declared on.**

In an action for the death of a motorman caused by a collision with a car ahead, where the sole negligence charged in the complaint was that of the conductor of the car collided with a trailer, and there was evidence from which negligence of the motorman of the mo-

---

tor car drawing the trailer might possibly be inferred, it was error to refuse defendant's requested instuction that no verdict could be found for plaintiff on account of any act or omission of such motorman.

**6. Trial ☜233(1)—Charge stating negligence alleged held misleading.**

In an action for the death of motorman caused by collision with a car ahead, where the sole negligence charged in the complaint was that of the conductor of the car collided with, a trailer, and there was evidence from which negligence of the conductor of the motor car drawing the trailer might possibly be inferred, a statement in the oral charge that the complaint charged the conductor of the "front car" with negligence was a mistake, if the reference was to the "front car" ahead of the trailer with which deceased's car collided.

**7. Appeal and error ☜301—Rulings on admission of testimony held reviewable, though not assigned as ground of motion for new trial.**

As respects review of rulings on admission of testimony, appellee's contention that the bill of exceptions only serves to present for review matters made the subject of grounds of motion for new trial, and that such rulings were not assigned as ground of the motion for new trial. held not tenable, where the record showed that the bill of exceptions for review of the main trial was seasonably presented to and signed by the presiding judge, as was the case with respect to the motion for new trial.

**8. Evidence ☜117—Error to admit testimony as to lights on rear of car collided with.**

In an action for the death of a motorman caused by a collision with a car ahead in a fog, it was error to permit witnesses, who testified that they did not see the car collided with before the collision, to testify, over objection, as to their observance or nonobservance of a burning light on the rear of the car collided with, where it was not first shown that the condition of such car was the same when they observed it as it was before the collision; and, similarly, it was error to overrule objections to question to such a witness, "Did you see any bulbs for lights on the back end of the car where (deceased's) car struck it?" where similarity of conditions before and after the collision was not first shown, as electric light bulbs might have been broken by the collision if they had been there.

**9. Master and servant ☜243(1)—Rule as to running street cars in fog held reasonable.**

In an action for the death of a motorman caused by a collision with a car ahead in a fog, the court correctly instructed that rule of defendant company, "In case of fog, cars will be run carefully and under full control," was reasonable.

**10. Master and servant ☜243(1)—Rule as to running street cars in fog held, to supersede other general rules.**

A rule of a street car company, that in case of fog cars should be run carefully and under full control, superseded, where there was a dense fog in which a motorman was killed by collision, any other general rule with respect to

the schedule provided for his car, and this without regard to what speed or schedule other operators on that line, in disregard of the fog rule, may have maintained about the time of his injury; and the rule was mandatory upon the motorman, he having no discretion with respect to its observance.

**11. Master and servant ☜289(35)—Construction of unambiguous rule for court.**

Where a rule of the employer, known to the employee, is in force and its terms are clear and unambiguous, the interpretation or construction of the rule is for the court, not the jury.

**12. Master and servant ☜296(13)—Instructions on compliance with rule as to running cars in fog held erroneously refused.**

In an action for the death of a motorman caused by a collision with a car ahead, where it appeared that at the time of the collision there was a dense fog and that there was a rule in force, and known to deceased, requiring cars to be run carefully and under full control, the court erroneously refused defendant's requested instruction that it was deceased's duty on the occasion of his death to operate his car, when he was killed, in such manner as to be able to stop it after seeing the car with which it collided and before colliding therewith, and also an instruction that it was deceased's duty on the occasion of his death to operate his car carefully and under full control.

**13. Master and servant ☜243(1)—Injury from violation of reasonable rule not actionable.**

Where the injured servant violates a reasonable rule of the master, that is known to the servant and that is in force at the time, there can be no recovery for such servant's injury, and, if observance of the rule by such an injured servant would have avoided the injury, neither the servant nor his personal representative is entitled to recover for the injury.

**14. Master and servant ☜289(35)—Affirmative charge erroneously refused on evidence showing motorman's violation of rule as to running in fog.**

In action for death of motorman in service of defendant street railway company by collision with car ahead of deceased's car in a dense fog, where the evidence admitted of no other inference than that, had deceased observed the rule in force of defendant street railway company, of which he had knowledge, requiring cars to be run under full control in a fog, the collision would not have occurred, and that it was possible for him to do so, it was error to refuse defendant the general affirmative charge.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

Action for damages by Hattie Lee Deaton, as administratrix, against Lee C. Bradley, as receiver of the Birmingham Railway, Light & Power Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Tillman, Bradley & Baldwin, John S. Stone, and John S. Coleman, all of Birmingham, for appellant.

Count 2 did not inform defendant with what acts of negligence it was charged, and demurrer thereto should have been sustained. 119 Ala. 572, 24 South. 862; 149 Ala. 474, 42 South. 1019; 161 Ala. 351, 49 South. 453; 183 Ala. 310, 62 South. 804; 114 Ala. 214, 21 South. 430; 171 Ala. 251, 55 South. 170; 130 Ala. 470, 30 South. 586; 1 Ala. App. 370, 56 South. 253; 201 Ala. 679, 79 South. 251; 183 Ala. 298, 62 South. 808. It was error to overrule defendant's objections to the questions propounded to the witnesses Eastwood and Hargrove, with regard to lights on the rear end of the car collided with. 93 Ala. 133, 9 South. 525; 112 Ala. 98, 20 South. 424; 137 Ala. 206, 33 South. 863; 163 Ala. 240, 50 South. 996; 195 Ala. 295, 70 South. 249; 41 N. W. 63; 109 Md. 377, 72 Atl. 543. The conductor in charge of the trailer car was the only employé of defendant charged with negligence, and it was error to submit to the jury the negligence vel non of any other employé. 115 Ala. 529, 22 South. 447; 158 Ala. 391, 48 South. 99; 192 Ala. 665, 69 South. 73; 35 S. W. 910. If the observance of the rule of defendant by plaintiff's intestate would have prevented the accident, plaintiff is not entitled to recover. Defendant was entitled to the affirmative charge. 171 Ala. 233, 54 South. 566; 110 Ala. 143, 20 South. 67; 202 Ala. 289, 80 South. 354; 152 Ala. 154, 44 South. 683; 3 Labatt, M. & S. (2d Ed.) 3585; 156 Ky. 66, 160 S. W. 803, L. R. A. 1916E, 263; 170 Fed. 154, 95 C. C. A. 410; 164 Ala. 111, 51 South. 424; 18 R. C. L. 659.

Black, Altman & Harris, of Birmingham, for appellee.

The existence of a rule is no defense to the master, in an action by a servant, unless the servant had actual knowledge of the rule. 87 Ala. 392, 6 South. 40; 92 Ala. 241, 9 South. 271; 92 Ala. 300, 9 South. 252, 25 Am. St. Rep. 47; 111 Ala. 275, 19 South. 1001; 83 Ala. 518, 3 South. 764; 112 Ala. 216, 20 South. 472. The jury must decide whether a servant had knowledge of a rule, whether he violated it, and whether that violation is the proximate cause of his injuries. 105 Fed. 212, 44 C. C. A. 451; 190 Ala. 30, 66 South. 684; 128 Mich. 61, 87 N. W. 136; 79 S. C. 69, 60 S. E. 231; (Tex. Civ. App.) 57 S. W. 693; (Tex. Civ. App.) 95 S. W. 602; 191 Ala. 514, 67 South. 687. Where a master has a rule requiring a servant in charge of a car stopped on the track to go back and warn approaching cars, the motorman of an approaching car has a right to assume that the servant will obey the rule. 179 Ala. 239, 60 South. 933; 46 Minn. 439, 49 N. W. 239. It is not error to refuse abstract or misleading charges. 198 Ala. 57, 73 South. 423; 198 Ala. 302, 73 South. 510; 15 Ala. App. 463, 73 South. 825; 203 Ala. 136, 82 South. 166; 17 Ala. App. 224, 84 South. 636.

McCLELLAN, J. [1] The action is for damages for the death of plaintiff's (appellee's) intestate Deaton, who, at the time of his injury, was a motorman in the service of appellant on one of its street railway lines. The case was submitted to the jury on the averments of count 2. This count was drawn to state a cause of action under subdivision 5, Code, § 3910, of our Employers' Liability Act. The count is a copy of the count (5) expressly approved in B. R. L. & P. Co. v. Mosely, 164 Ala. 111, 119, 120, 51 South. 424. Consequent upon the earnest insistence for appellant that the count is defective, particularly in the respect that the subject of the control superintendency referred to in the count (2) is not sufficiently described or defined, the court en banc has reconsidered the count, and concludes that the sufficiency of the count was well affirmed in the Mosely Case, and hence, in the present instance, consistent with the satisfactory authority of A. G. S. R. R. Co. v. Davis, 119 Ala. 572, 24 South. 862. Other decisions, the court holds, treating the sufficiency of counts under the second, "superintendents," subdivision of Code, § 3910, do not invite a different conclusion; for that under the second subdivision a superintendency may extend over a wider subject of control than that subdivision 5 contemplates, and hence a defendant may be sufficiently advised, to conform to good pleading, by a less specific description of the subject of the "charge or control" in an action under subdivision 5 than is requisite in an action under subdivision 2. Furthermore, the court is of the opinion that the reason stated for the view taken in the Mosely Case, viz. that the fact that the employee was killed introduced a discriminating factor, was ill advised and untenable. To that extent only, in the presently pertinent phase of the Mosely Case, that pronouncement is modified. The demurrer to count 2 was overruled without error. This count (2) attributed intestate's death to "the negligence of the conductor, whose name is unknown to plaintiff, in the service and employment of defendant, and who then and there had charge or control of the car upon the track of the defendant's said railway, with which the car upon which plaintiff's intestate was collided." It appears from the count as well as from the evidence that the car described was a trailer, attached to another car ahead of it called the motor car; and that one Andrews was the conductor of the "trailer." The bill of exceptions recites:

"Counsel for plaintiff then stated as follows: I will state to the court that I mean to amend the complaint later and charge: * * * Use the word 'motorman' where I have con-

ductor, * * * the motorman in charge of the car, whoever it was."

The only negligence declared on is that ascribed to Andrews, the conductor of the trailer. The subsequent pleading was the general issue and contributory negligence on the part of Deaton because of his asserted violation of, first, a printed rule, and, second, of his violation of special instructions, both relating to the operation of cars by motormen during periods when there was a fog. The evidence is undisputed that there was a heavy fog covering the section through which Deaton's car was moving before and at the time of his fatal injury.

[2] The appeal's consideration must be according to its natural division, viz.: First, the negligence alleged in count 2, that of Conductor Andrews; and, second, the asserted contributory negligence of Deaton predicated of the violation of the printed rule or of special instructions to which reference has been already made. On the occasion of Deaton's injury, a motor car, to which the mentioned "trailer" was attached, had struck something, and was stationary on the track ahead of Deaton. A heavy fog hung over the neighborhood. Deaton's car collided with the "trailer," killing him. To Perry, division superintendent for defendant, was propounded this question:

"Was it on the 24th of December, 1919, the duty of a conductor working for the defendant, if his car was stopped on the track in a dense fog, to go back on the track and give any kind of warning to approaching cars?"

After untenable objections were overruled, the court inquired, "You mean the duty under the rules of the company?" to which counsel replied in the affirmative. After further untenable objection, the witness answered the thus formulated question: "It is the general rule." The effect of this testimony was to show a duty on Andrews, conductor of the "trailer," in the circumstances defined in the "general rule" of the company. The evidence otherwise discloses that Andrews did not at all attempt to meet the duty enjoined by the "general rule." Clem, the conductor on the motor car in front of the "trailer," did go back with the view to warning or signaling approaching cars; but, according to his testimony, his purpose and effort was interfered with by a vehicle on the highway a short distance from where his car had stopped that obstructed Clem's vision as Deaton's car passed Clem. This phase of Perry's evidence precluded appellant's right to the general affirmative charge on the theory that there was no evidence tending to show negligence on the part of Andrews.

[3] It is, in effect, insisted for appellant that, since count 2 charged Andrews with negligence in his "charge or control" of the car (the trailer) and not with negligence in respect of "charge or control" of a "signal"

(Code, § 3910, subd. 5), the evidence of failure or fault in giving warning signal did not tend to support even the very general averment of Andrews' negligence in count 2. The "general rule" to the existence of which Perry testified may have been violated by a conductor who made no attempt to observe that rule's direction; who did not, in any way or degree, undertake the observance of the rule's command or the assumption of charge or control over the means whereby the rule's duty might be performed. The object of the rule stated by Perry was to prevent injury to persons and property. The duty it defined was laid on conductors, under the circumstances the rule prescribes; and a failure to observe the duty thereby enjoined, through complete omission to assume the discharge of the duty, would be negligence in a conductor in "charge or control" of the stationary car the rule designed to protect from collision to the rear. Though entirely sound, the decisions cited in appellant's brief in this connection do not invite or require a different conclusion.

[4] The court did, however, err in refusing the following request for instruction:

"If you believe the evidence in this case, you cannot find a verdict for plaintiff on account of any act or failure to act or conduct on the part of the witness Clem."

As stated, the sole negligence charged in count 2 was that of Andrews, conductor of the trailer. Clem, conductor of the motor car, was not within the averments of the count. Perry's testimony with reference to the "general rule" made Clem as well as Andrews subject to that general rule's command; whereas, only Andrews' conduct or omission was declared on in count 2. In these circumstances the defendant was due instruction, such as that quoted, to confine the jury's consideration to the negligence charged and to exclude from the jury's consideration possible negligence on the part of a servant whose fault, if so, was not declared on.

[5] The court also erred in refusing to defendant this request for instruction:

"If you believe the evidence in this case, you cannot find a verdict in favor of plaintiff on account of an act or failure to act on the part of the witness Rushing."

Rushing was the motorman operating the front car. The bill of exceptions recites that plaintiff introduced defendant's printed rule 7. This rule reads:

"*Responsibility*—The motorman is in charge of the car and is held responsible—

"For running the car according to schedule. For signal, lights on rear end of train for protection on rear end of train when stopped on main line, by going back not less than five poles with red signal to stop any car following."

In view of this evidence, the defendant was entitled to have the jury's consideration confined to the negligence alleged against Andrews only and to exclude recourse to any fault or wrong that might be attributed to Rushing.

[6] There are also statements in the oral charge of the court indicating that proper account was not taken of the fact that to only one employee, Andrews, was negligence ascribed in count 2. Indeed, in one place the court stated that the count charged the conductor of the "front car" with negligence; which was a mistake if the reference was to the "front car" ahead of the "trailer" with which Deaton's car collided.

Notwithstanding seasonable objections, the witnesses Easterwood and Hargrove were allowed to testify with reference to their observance or their nonobservance of a burning light on the rear of the "trailer" with which Deaton's car collided.

[7] It is insisted for appellee that the bill of exceptions only serves to present for review matters made the subject of grounds of the motion for new trial, and that the rulings on the admission of the testimony indicated were not assigned as ground of the motion for new trial. The record shows that the bill of exceptions for review of the main trial was seasonably presented to and signed by the presiding judge, as was the case with respect to the motion for new trial.

[8] The court erred in overruling the objections to the question eliciting the testimony indicated. These witnesses should not have been permitted, over the appropriate objection that was made, to testify that there was no light burning on the rear of the car when they observed it. Both of these witnesses testified that they did not see the "trailer" before the collision. In other words, their observation with respect to burning lights on the rear of the "trailer" was subsequent to the collision. According to familiar rule (Sou. Ry. Co. v. Lefan, 195 Ala. 295, 298, 299, 70 South. 249), unless it was first shown that the condition of the "trailer" was the same when they observed the absence of lights as it was before the collision, the objections, taking this point, were erroneously overruled. In reference to the question propounded to Easterwood, viz. "Was there any lights burning on it at that time?" it is insisted in brief for appellee as follows:

"In the first place, Easterwood testified on his direct examination (page 36 of the transcript): 'I could not see any light on the back end of the car. It was just momentarily after I looked up that the collision occurred. It happened about the time I looked up.' * * * Easterwood's quoted statement clearly shows there is no force to this argument of appellant."

The insistence is founded in mistake. The matter quoted in brief for appellee is from the testimony of another witness, J. T. Burge, and not from the testimony of Easterwood, who, according to the record here, gave no testimony to that effect.

Upon like consideration, with reference to the condition of the rear end of the "trailer," the court erred in overruling appropriate objection to this question to the witness Hargrove:

"Did you see any bulbs for lights on the back end of the car where Mr. Deaton's car struck it?"

Electric light bulbs are such fragile things that an impact might, if they were there, have broken them. The witness did not see the rear of the "trailer" until after the collision. The similarity of the conditions in this respect before and after the collision, should have been first shown.

[9, 10] In bar of recovery by plaintiff, defendant (appellant) relies upon Deaton's contributory negligence resulting from his failure to observe printed rule 225, reading: "In case of fog cars will be run carefully and under full control." The court correctly instructed the jury that this rule was reasonable. L. & N. R. R. Co. v. Mothershed, 110 Ala. 143, 20 South. 67. It was shown without dispute to have been in force at the time Deaton was killed. He had been a motorman in defendant's (appellant's) service for three years. It was also established, without conflict, that Deaton knew of this rule. The court also correctly instructed the jury, in the language of B. R. L. & P. Co. v. Mosely, 164 Ala. 111, 122, 51 South. 424, that—

"Where there is a general rule that applies under usual and ordinary conditions, and a special rule which applies under extraordinary conditions, the special rule supersedes the general rule when such extraordinary conditions obtain. No other construction could give scope for the operation of both rules."

The extraordinary conditions specified in rule 225 were shown, without dispute, to have existed on this occasion, viz. a fog, which is described as a "dense fog." This rule was mandatory upon Deaton; he having no discretion with respect to the observance of its direction. Mothershed's Case, supra. If rule 225 was in force at this time—and the evidence to that effect was undisputed—it superseded any other general rule with respect to the schedule provided for Deaton's car; this without regard to what speed or schedule other operators on that line, in disregard of rule 225, may have maintained on the morning of Deaton's injury. In Great Northern Ry. Co. v. Hooker, 170 Fed. 154, 158, 95 C. C. A. 410, it was aptly said (Judge Van Devanter writing):

"True, other rules laid upon others the duty of displaying signal lights upon and about the cars upon the main track; but that did not relieve him of the duty so plainly laid upon him, or justify him in treating the absence of such

signal lights as an assurance that the track was clear. On the contrary, the rules show that these duties were distinctly and separately imposed in a manner which prevented either from qualifying or lessening the other; the purpose being to provide for double or cumulative precautions against a collision."

[11] Where a rule of the employer, known to the employee, is in force and its terms are clear and unambiguous, the interpretation or construction of the rule is for the court, not the jury. 1 Labatt on Master and Servant, § 215; M. & C. R. R. Co. v. Graham, 94 Ala. 545, 10 South. 283; Great Northern Ry. Co. v. Hooker, 170 Fed. 154, 159, 95 C. C. A. 410. and other authorities therein cited. In the Graham Case, supra, this court denied the admissibility of testimony designed to show a "custom and usage" contradictory of the terms of a rule that was held to be unambiguous; this upon the principle generally applicable to contracts.

[12] Rule 225 (quoted above) is unambiguous. It was the court's function and duty to interpret or construe this rule, if its service was appropriately invoked to that end. The defendant was erroneously refused this request for instruction:

"The court charges the jury as a part of the law in this case that it was the duty of the plaintiff's intestate on the occasion of his death to operate the car on which he was motorman when he was killed in such manner as to be able to stop the same after seeing the car with which it collided and before colliding therewith."

The court also erroneously refused this instruction, requested for defendant:

"The court charges the jury as a part of the law in this case that it was the duty of the plaintiff's intestate on the occasion on which he received the injuries resulting in his death to operate the car on which he was motorman carefully and under full control."

The first of the two quoted requests for instruction correctly interpreted rule 225. The words "full control," in the circumstances and relation therein employed, directed the motorman, "in case of fog," to so gauge the speed of the car in his control as to permit its being stopped within the range of his vision ahead. Of a rule of analogous character, containing "control" as a chief element, this court said in Mothershed's Case, supra:

"The end and obvious tendency of its promulgation and enforcement was the all-important one of avoiding great peril to life and property. The highest considerations of duty to its employees, the general public, and itself, impelled the defendant to its adoption. Being promulgated, and no unforeseen emergency arising which would render obedience to it in a given case impracticable or disastrous, all discretion as to the necessity of obedience was exhausted. The engineer having the means of observance, the rule was mandatory upon him."

The other request quoted reiterated the rule and thereupon properly predicated Deaton's then duty to have observed it.

The evidence did not disclose any authoritative supercession of rule 225 by another conflicting rule nor by any special instruction authoritatively given Deaton. There was no evidence of any "unforeseen emergency arising" on that occasion which rendered observance of rule 225 "impracticable or disastrous," within the doctrine heretofore reproduced from Mothershed's Case.

[13] Where the injured servant violates a reasonable rule of the master, that is known to the servant and that is in force at the time, there can be no recovery for such servant's injury. Woodward Iron Co. v. Lewis, 171 Ala. 233, 241, 54 South. 566; Red Feather Coal Co. v. Murchison, 202 Ala. 289, 290, 80 South, 354; L. & N. R. R. Co. v. Markee, 103 Ala. 160, 173, 174, 15 South. 511, 49 Am. St. Rep. 21. If observance of the rule by such an injured servant would have avoided the injury, neither the servant nor his personal representative is entitled to recover for the injury. At page 3585 of Labatt's Second Edition on Master and Servant, it is said:

"Wherever the evidence tends to show that the injured servant violated a rule, the master is entitled to have the jury instructed that there can be no recovery if they find that the accident would not have happened if the rule had been observed. Under such circumstances, it is not sufficient merely to tell the jury not to find for plaintiff if they believe he could have escaped injury by the use of ordinary care."

[14] The evidence in this record admits of no other inference or conclusion than that had Deaton observed the command of rule 225—had operated his car on that occasion, in the fog, under "full control"—the collision with the car ahead would not have occurred. That his car could have been so operated on this occasion, though at a reduced speed, is also shown without dispute in the evidence. There was evidence that the vision ahead, through the dense fog, extended a short distance at least. From these principles and the considerations stated it results that the defendant was erroneously refused the general affirmative charge requested.

Under the conclusion thus prevailing, it is not necessary to consider the questions, discussed in the briefs, arising over the defendant's insistence that special, authoritative, preservative instructions were given Deaton by a superintendent on the morning of and before his injury,

The judgment is reversed, and the cause is remanded.

Reversed and remanded.

All of the Justices concur.